**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Michael G. THEVIS and Peachtree News
Company, Inc., Defendants-
Appellants.**

**No. 71-2614.**

United States Court of Appeals,
Fifth Circuit.

Sept. 12, 1973.

Rehearing and Rehearing En Banc
Denied Nov. 15, 1973.

Robert E. Smith, Atlanta, Ga., Norman J. Abood, Jacksonville, Fla., for defendants-appellants.

John L. Briggs, U. S. Atty., Jacksonville, Fla., Richard C. Owens, Atty., U. S. Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before JOHN R. BROWN, Chief Judge, and BELL and SIMPSON, Circuit Judges.

BELL, Circuit Judge:

Appellants Thevis and Peachtree News Company, Inc. were charged in a twelve-count indictment with transporting obscene material by common carrier in interstate commerce, in violation of 18 U.S.C.A. § 1462.[1] Jury trial was

---

1. 18 U.S.C.A. § 1462 (1966):
 Whoever brings into the United States, or any place subject to the jurisdiction thereof, or knowingly uses any express company or other common carrier, for carriage in interstate or foreign commerce—

waived. The subject matter of each count was a particular magazine and appellants were convicted on each of the counts. The district court, 329 F.Supp. 265, found that the material in question, i. e., each magazine, was obscene under the three-pronged test of *Memoirs*.[2] A term of six months imprisonment and five years probation was imposed on Thevis under each count, with the sentences to be served concurrently. In addition, fines were imposed on each defendant with respect to each count. This appeal followed. We affirm with respect to six counts and reverse as to six.

In urging reversal, appellants originally presented five arguments to this court. These were: (1) that the constitutional test for obscenity must focus on whether "pandering" is involved in the distribution of challenged material, and on whether the material is distributed to minors or unwilling adults, cf. Redrup v. New York, 1967, 386 U.S. 767, 87 S.Ct. 1414, 18 L.Ed.2d 515; (2) that the indictment was unconstitutionally vague in that it merely tracked the statutory language without specifying the elements constituting "obscenity"; (3) that it was necessary for the government to prove that the appellants had transported the magazines knowing that they were obscene in the constitutional sense; (4) that 18 U.S.C.A. § 1462 is void for overbreadth in that it reaches transportation of obscene material for private as well as commercial use; and (5) that the prosecution failed to prove by competent evidence that the magazine fell outside the protection of the *Memoirs* standard. We understand appellants' fifth assignment of error to include two distinguishable elements: first, that the prosecution failed to produce sufficient expert testimony; and second, that the

evidence, of whatever nature, was insufficient to support the lower court's finding on the issue of obscenity vel non. We will treat these two elements as separate assignments of error.

Subsequent to oral argument, the Supreme Court announced five opinions in which a majority of that Court agreed on concrete guidelines to isolate materials depicting or describing "patently offensive 'hard core' sexual conduct" from expression protected by the First Amendment. Miller v. California, 1973, 413 U.S. 15, 27, 93 S.Ct. 2607, 2616, 37 L.Ed.2d 419, 432; Paris Adult Theatre I v. Slaton, 1973, 413 U.S. 49, 93 S. Ct. 2628, 37 L.Ed.2d 446; United States v. Orito, 1973, 413 U.S. 139, 93 S.Ct. 2674, 37 L.Ed.2d 513; Kaplan v. California, 1973, 413 U.S. 115, 93 S.Ct. 2680, 37 L.Ed.2d 492; United States v. 12 200-Ft. Reels of Super 8 mm Film, 1973, 413 U.S. 123, 93 S.Ct. 2665, 37 L.Ed.2d 500.

In light of these opinions, appellant has filed a supplemental brief urging that the *Memoirs* standard can no longer be used for testing obscenity. Further, in this brief it is argued that the *Miller* standard is also inapplicable, for two reasons: (1) that application of the new standard would be violative of the Ex Post Facto clause of Article I, § 9, United States Constitution; and (2) that in any case the material in question would be protected under *Miller* because 18 U. S.C.A. § 1462, as written or authoritatively construed, does not specifically define that sexual conduct whose depiction or description is thereby regulated. In essence, appellants are contending, on the authority of *Miller*, that the Supreme Court has eliminated all obscenity laws that would have been otherwise applicable to transactions occurring prior to June 21, 1973, and that the Court has

(a) any obscene, lewd, lascivious, or filthy book, pamphlet, picture, motion-picture film, paper, letter, writing, print, or other matter of indecent character; . . .
shall be fined not more than $5,000 or imprisoned not more than five years,

or both, for the first such offense. · · ·

2. A Book Named "John Cleland's Memoirs of a Woman of Pleasure" v. Massachusetts, 1966, 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1.

also eliminated all laws controlling obscenity after that date, save as legislatures enact or courts construe statutes to meet the *Miller* requirements. In sum, claim the appellants, we are without power to test the materials for obscenity under any standard. We reject this broad contention. We do not perceive that the Supreme Court, either deliberately or unwittingly, has stripped the nation of laws against obscenity in any such manner.

For reasons to be discussed in Part II of this opinion, we hold that the twelve magazines are to be tested for obscenity under both standards, with the appellants in every instance to receive the benefit of the most favorable standard. We reserve the issue of obscenity *vel non*, under both standards, for Part III. In Part I we shall consider appellants' first five original assignments of error.

### I.

■ Appellants' first assignment of error is that the materials in question should not be tested under a standard as restrictive of pornography [3] as *Memoirs*. Rather they urge a standard arguably suggested in Redrup v. New York, supra, requiring for a finding of obscenity that the materials be distributed to nonconsenting adults, to juveniles, or generally in a "pandering" manner. We consider this argument to have been completely foreclosed by the Supreme Court's statement, in *Miller*, that the *Memoirs* standard was correctly viewed as the limit on state prosecution prior to *Miller*, 413 U.S. at 30, 93 S.Ct. at 2618, 37 L.Ed.2d at 435. We also find entirely spurious the argument that there was such a marked departure in *Redrup* from the basic assumption of *Memoirs*, that the nature of the material and not the manner of its distribution is

determinative of obscenity. In the *Redrup* per curiam opinion, the Court specifically declined to consider the effect of the characteristics of the method of distributing pornographic materials. Finally, we note that the origin of the "pandering" concept is Ginzburg v. United States, 1966, 383 U.S. 463, 86 S. Ct. 942, 16 L.Ed.2d 31, and that pandering in that case was specifically treated merely as an indicator of whether the material itself appealed to prurient interests and was utterly without redeeming social value. See *Ginzburg*, 383 U.S. at 467–476, 86 S.Ct. 942.

■ Appellants' second argument is that the indictment, which tracked the wording of 18 U.S.C.A. § 1462, must be dismissed for failure to specify the elements of obscenity. We do not agree. The general rule, stated by this court, is that:

> "An indictment which follows the language of the statute is ordinarily sufficient unless the statute omits an essential element of the offense."

United States v. Farabee, 5 Cir., 1969, 411 F.2d 1210, 1211; Downing v. United States, 5 Cir., 1965, 348 F.2d 594, 599. See also Esperti v. United States, 5 Cir., 1969, 406 F.2d 148; Bland v. United States, 5 Cir., 1962, 299 F.2d 105. The statute here does not omit any essential element of the offense for which appellants have been convicted. The term "obscene" as used in the statute is a legal term of art, not merely a generic or descriptive term. The term has been the subject of much explication in Supreme Court opinions, and in particular has been defined in *Roth* [4] and *Memoirs*. Further, in *Roth* the Court held that the words used in 18 U.S.C.A. § 1462 are sufficiently precise to avoid the due process vice of vagueness.[5]

---

3. "Pornography" derives from the Greek (*porné*, harlot, and *graphos*, writing). It now means "1: a description of prostitutes or prostitution. 2: a depiction (as in writing or painting) of licentiousness or lewdness: a portrayal of erotic behavior designed to cause sexual excitement." Webster's New International Dictionary (Unabridged, 3d Ed., 1969). Whether or not the material in question is obscene, it is pornography. This latter term connotes no legal conclusions or consequences.

4. Roth v. United States, 1957, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498.

5. The sufficiency of an indictment tracking the words of 18 U.S.C.A. § 1462 was challenged in United States v. Luros, N.D.Iowa,

Appellants' third contention deals with the scienter necessary for conviction under 18 U.S.C.A. § 1462. Appellants claim that it is necessary for the government to prove not merely knowledge of the nature of the materials placed in interstate commerce, but also to prove that appellants were aware that the materials were legally obscene.

Appellants base this argument on Smith v. California, 1959, 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205. In *Smith,* the Supreme Court reversed the conviction of a book store proprietor under an ordinance that imposed absolute criminal liability on any party possessing obscene matter for sale. The Court held that scienter, of some nature, was a necessary element where First Amendment Rights were concerned. However, the Court pointedly did not pass on the nature of the requisite mental element. Apparently the Court did not disturb its holding in Rosen v. United States, 1896, 161 U.S. 29, 16 S.Ct. 434, 40 L.Ed. 606, that knowledge or notice of the contents of obscene material is sufficient and that it need not be shown that the material was, in the opinion of the accused, legally obscene. A number of lower courts have followed *Rosen* in recent years: United States v. West Coast News Company, 6 Cir., 1966, 357 F.2d 855, rev'd on other grounds, Aday v. United States, 1967, 388 U.S. 447, 87 S. Ct. 2095, 18 L.Ed.2d 1309; Schindler v. United States, 9 Cir., 1953, 208 F.2d 289. See also Kahm v. United States, 5 Cir., 1962, 300 F.2d 78. We hold that the government, by proving that the appellants knew the nature of the materials they put in interstate commerce, has met its burden of proving scienter.

The appellants' fourth contention is that the statute under which they have been prosecuted is overbroad because it fails to distinguish between transportation of obscene materials for private use and that for commercial distribution. This argument arises from Stanley v. Georgia, 1969, 394 U.S. 557,

89 S.Ct. 1243, 22 L.Ed.2d 542, which established that individuals may possess obscene materials in the privacy of their own homes; and it assumes that there is a correlative right to transport and receive such material for private use. Whatever validity, if any, this reasoning may ever have had was badly eroded by United States v. Thirty-Seven Photographs, 1971, 402 U.S. 363, 91 S.Ct. 1400, 28 L.Ed.2d 822, and United States v. Reidel, 1971, 402 U.S. 351, 91 S.Ct. 1410, 28 L.Ed.2d 813. The argument has now been absolutely foreclosed by United States v. Orito, supra. In *Orito* the Court ruled against a defendant who made precisely the same claim raised here.

The first element of appellants' fifth contention is that their conviction is precluded by the government's failure to use sufficient expert testimony on the issues of prurient appeal, community standards, and redeeming social value. We held in United States v. Groner, 1973, 479 F.2d 577 (En banc), that expert testimony on the part of the prosecution is not necessary in cases where the materials themselves are available for inspection by the finder of fact. That we were correct in this opinion was made clear in Paris Adult Theatre I v. Slaton, supra, 413 U.S. at 56, 93 S. Ct. at 2634, 37 L.Ed.2d at 456. See also Kaplan v. California, supra, 413 U.S. at 120, 93 S.Ct. at 2684, 37 L.Ed.2d at 498.

## II.

We now turn to the issues raised in appellants' supplemental brief, dealing with whether *Miller* precludes testing for obscenity under any standard.

In *Miller* the Court states that the constitutional test for obscenity is whether:

"(a) [T]he average person, applying 'contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest," (citations omitted)

1965, 243 F.Supp. 160, rev'd on other grounds, 8 Cir., 1968, 389 F.2d 200. That

court reached a conclusion identical to ours. *Id.* at 166–167.

"(b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law, and

"(c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value."

In *Orito*, supra, and *12 200-Ft. Reels*, supra, the Court made clear that this standard also applies to prosecutions under federal statutes. It might be noted that *Miller* relaxes the government's burden by eliminating the *Memoirs* requirement that the material be proven "utterly without redeeming social value", and by the Court's clarification that "community standards" does not refer to a nationwide community. On the other hand, in order carefully to limit regulation of pornographic materials, so as to avoid First Amendment incursions, the *Miller* standard requires that regulatory statutes define specific sexual conduct to whose depiction or description they apply. However, the Court makes clear that the statutory requirement can be satisfied by a judicial gloss, and that statutes as broad as 18 U.S.C.A. § 1462 are subject to such construction. See *12 200-Ft. Reels*, supra, fn. 7 (discussed and quoted at p. 13 infra).

Having thus stated the standards governing control of pornography, and having also resolved other points of uncertainty,[6] the Supreme Court in each case, and in some 60 other cases dealt with summarily or by per curiam decision on July 25, 1973, vacated the judgments and remanded for further proceedings not inconsistent with the *Miller* series of opinions.

Appellants would have us conclude that the Court's wholesale vacation and remand of obscenity cases, and especially that of Kaplan v. California, supra (in which the Court agreed that the material was obscene under the *Memoirs* standard), established that the *Memoirs* standard could not have been used as a basis for conviction in pending cases.

■ We decline to read so much into *Miller*. Rather, we conclude that by indiscriminately vacating and remanding these cases, the Supreme Court declared that all obscenity cases which had not reached final adjudication should be reexamined in light of its clarification of previous standards and its declaration of new standards. We do not read this as precluding our application of the *Memoirs* standard to materials involved in transactions occurring in 1970. We base this conclusion on several observations. For one, we note that the Supreme Court in *Miller* stated specifically that *Memoirs* was "correctly regarded at the time of trial as limiting state prosecution under controlling case law." 413 U.S. at 30, 93 S.Ct. at 2618, 37 L.Ed.2d at 435.

Further, at no point did the Court indicate that *Miller's* clarification and modification of *Memoirs* was the result of *Memoirs* permitting unconstitutional infringement on efforts to distribute pornography. Rather, the Court was dissatisfied with *Memoirs*, because it imposed greater burdens on the regulation of such materials than was demanded by the Constitution. Thus the Court criticized the "utterly without redeeming social value" requirement as being a "burden virtually impossible to discharge under our criminal standards of proof." *Miller*, 413 U.S. at 22, 93 S.Ct. at 2613, 37 L.Ed.2d at 429, and it stated that "it is neither realistic nor constitutionally sound to read the First Amendment as requiring that the people of Maine or Mississippi accept public depiction of conduct found tolerable in Las Vegas or New York City". *Id.*, at 32, 93 S.Ct. at 2619, 37 L.Ed.2d at 435. We are unable to conclude from the Court's wholesale remand of these cases, without more, that the Court, concerned as it was for strengthening the power to regulate pornography, chose gratuitously to eliminate constitutionally-valid law that would otherwise be available in prosecuting pending obscenity cases.

---

**6.** Some of the auxiliary rulings were noted above when this court dealt with various of the appellants' original arguments for reversal. See Part I of this opinion.

However, we do believe it to be our duty, under the *Miller* remands and in view of the care with which the judiciary must protect First Amendment rights, to assure that no one is convicted under earlier extant standards if they are more restrictive of pornography than those in *Miller*. Thus when we make, as we are required to do, an "independent constitutional judgment on the facts of the case as to whether the material is constitutionally protected", Jacobellis v. Ohio, 1964, 378 U.S. 184, 190, 84 S.Ct. 1676, 12 L.Ed.2d 793; United States v. Groner, 5 Cir., 1973, supra, we shall consider both the *Miller* and *Memoirs* definitions of obscenity. Any count based on a magazine which is not obscene under both of these standards is due to be dismissed.

Our dual test approach is out of an abundance of caution based on the surmise that the Supreme Court, by vacating and remanding the entire group of obscenity cases, indicated that defendants in pending prosecutions were entitled to the benefit, if any, of the new standards. That our decision in this case must so accommodate the new standard is made evident by Miller v. United States, 1973, 413 U.S. 913, 93 S. Ct. 3030, 37 L.Ed.2d 1022. There the Court vacated and remanded a federal conviction for reconsideration in light of the *Miller* series of opinions. The federal conviction was under the *Memoirs* standard and the very statute here involved, and against a defendant who raised on appeal contentions similar to those made by the appellants here. See Miller v. United States, 9 Cir., 1970, 431 F.2d 655.

■ Therefore, before we consider the question of obscenity *vel non*, and because we do apply the *Miller* standard,

we must address ourselves to the question whether 18 U.S.C.A. § 1462 can satisfy the *Miller* requirement that the applicable statute specifically define sexual conduct whose depiction or description is thereby restricted. This assumes, of course, that the Supreme Court intended for appellants to have the benefit of the *Miller* standard.[7]

The statute under which the appellants were indicted proscribes interstate transportation of "obscene, lewd, lascivious, or filthy" materials. On its face, this statutory terminology does not contain the specifics required by *Miller*. The same, of course, might have been said of the statute while *Memoirs* controlled the definition of obscenity. The difference is that *Miller* requires that elements of the definition be a part of the statute. This requirement may be met, however, according to *Miller*, by authoritative judicial construction. Further, in *12 200-Ft. Reels*, supra, at fn. 7, the Court states that it is "prepared to construe such [federal statutory] terms as limiting regulated material to patently offensive representations or descriptions of that specific 'hard-core' sexual conduct given as examples in *Miller*. . . ."[8] We believe that this answers the question and that the definition of *Miller* is a gloss properly added to § 1462. The effect is to substitute the *Miller* definition of "obscene" for the *Memoirs* definition. On this basis we proceed to an examination of the materials which underlie the indictment.

### III.

In making our independent constitutional judgment under Jacobellis v. Ohio, supra, as to whether the materials in question are constitutionally protected, we have inspected the magazines in

---

7. We do not assume, given ex post facto considerations, that the Supreme Court intended to impose any detriment ensuing from the *Miller* standards on appellants.

8. These examples are:
"(a) Patently offensive representations or descriptions of ultimate sexual acts, nor-

mal or perverted, actual or simulated.
"(b) Patently offensive representations or descriptions of masturbation, excretary functions, and lewd exhibitions of the genitals."
*Miller*, 413 U.S. at 25, 93 S.Ct. at 2615, 37 L.Ed.2d at 431.

question and have applied both the *Memoirs* and *Miller* standards. Our conclusions on each element of both tests as to each magazine are contained in Table I.

TABLE I

| Magazine Titles | Memoirs (a) Dominant theme, taken as a whole, appeals to a prurient interest in sex | Memoirs (b) Patently offensive because it affronts contemporary community standards relating to description or representation of sexual matters | Memoirs (c) Utterly without redeeming social value | Miller (a) The average person, applying contemporary community standards, would find that the work taken as a whole appeals to the prurient interest | Miller (b) Patently offensive depiction or description of sexual conduct specifically defined by applicable statute | Miller (c) Taken as a whole, lacks serious literary, artistic, political or scientific value |
|---|---|---|---|---|---|---|
| Boys and Their Male Lovers | Yes | Yes | No | Yes | Yes | Yes |
| Duo | Yes | Yes | Yes | Yes | Yes | Yes |
| Domino | Yes | Yes | Yes | Yes | Yes | Yes |
| Love Knot | Yes | Yes | Yes | Yes | Yes | Yes |
| Wanton | Yes | Yes | Yes | Yes | Yes | Yes |
| My Boys | Yes | Yes | Yes | Yes | Yes | Yes |
| In & Its Nice | Yes | Yes | Yes | Yes | Yes | Yes |
| Girlfriends | Yes | Yes | No | Yes | Yes | Yes |
| Pussy Willow | Yes | Yes | No | Yes | Yes | Yes |
| Arcadia | Yes | Yes | No | Yes | Yes | Yes |
| Teenage Jaybirds | Yes | Yes | No | Yes | Yes | Yes |
| Cloud 9 | Yes | Yes | No | Yes | Yes | Yes |

In summary, we have concluded that all of the magazines are obscene under *Miller*, but that six are protected by the *Memoirs* requirement that they be

utterly without redeeming social value. We have distinguished these six from the remainder on the basis of their significant content of literary matter, including short stories of at least arguable merit as well as discussions of lesbianism, homosexuality, nudity, censorship, photography, marital sexual problems, and the nude in fine art. The inclusion of this literary matter in significant proportions precludes a finding, in our judgment, that the six magazines are "utterly without redeeming social value." The issue as to these six is close, due to the numerous pornographic pictures included with the literary matter. Indeed, the pictures in each instance are the principle content of the magazines and would, standing alone, be found obscene.

Since we have ruled that appellants are to receive any protection provided by either applicable standard, their convictions on the six counts based on magazines we find to be protected by *Memoirs* must be reversed. The judgment of conviction as to the other six counts is affirmed.

Affirmed in part; reversed in part.