**UNITED STATES of America,**
**Plaintiff,**

v.

**B & H DIST. CORP., et al.,**
**Defendants.**

**No. 70–CR–67.**

United States District Court,
W. D. Wisconsin.

April 10, 1974.

John O. Olson, U. S. Atty., Madison, Wis., for plaintiff.

James A. Walrath, Shellow & Shellow, Milwaukee, Wis., for defendants.

## OPINION AND ORDER

JAMES E. DOYLE, District Judge.

Defendants have been indicted on three counts under 18 U.S.C. § 1462.[1] The indictment charges that on three separate occasions in the fall of 1969 defendants "did knowingly and unlawfully transport and cause to be transported in interstate commerce by means of a common carrier from New York, State of New York to Wausau, Marathon County in the Western District of Wisconsin, certain obscene, lewd, lascivious and filthy magazines."

In an earlier order in this case, dated September 14, 1972, I held that § 1462 forbids one to carry obscene books for one's own use while traveling interstate in a common carrier, and by reason of this overbreadth, violates the First Amendment. The indictment was dismissed. On direct appeal to the United States Supreme Court, the judgment of this court was vacated and the case remanded for further consideration in light of Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973); Paris Adult Theatre I v. Slaton, 413 U. S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973); Kaplan v. California, 413 U.S. 115, 93 S.Ct. 2680, 37 L.Ed.2d 492 (1973); United States v. 12 200-ft. Reels of Super 8mm Film, 413 U.S. 123, 93 S.Ct. 2665, 37 L.Ed.2d 500 (1973); United States v. Orito, 413 U.S. 139, 93 S.Ct. 2674, 37 L.Ed.2d 513 (1973); Heller v. New York, 413 U.S. 483, 93 S.Ct. 2789, 37 L.Ed.2d 745 (1973); Roaden v. Kentucky, 413 U.S. 496, 93 S.Ct. 2796, 37 L.Ed.2d 757 (1973); and Alexander v. Virginia, 413 U.S. 836, 93 S.Ct. 2803, 37 L.Ed.2d 993 (1973). United States v. Orito, supra, raised the identical constitutional issue decided in my previous opinion in this case. Orito upheld the proscription against carrying an obscene book for one's private, non-commercial use from one state to another in a common carrier. Thus, the present indictment cannot be dismissed for the reason for which I had earlier dismissed it.

Defendants have now moved to dismiss the indictment on the grounds (1) that § 1462 is unconstitutionally vague because it does not specifically describe sexual conduct as required by Miller v. California, supra, and that no federal court has authority to give a new, saving construction to the statute, and (2) that application to defendants of the more limited First Amendment protection for sexually oriented materials enunciated in Miller would violate the fair notice requirement of the Due Process Clause of the Fifth Amendment.

### Vagueness

Defendants contend that § 1462 is void for vagueness in light of the revised constitutional limits on regulation of obscenity set forth in Miller. Miller held:

"We acknowledge, however, the inherent dangers of undertaking to regulate any form of expression. State statutes designed to regulate obscene materials must be carefully limited. [citation omitted] As a result, we now confine the permissible scope of such regulation to works which depict or describe sexual conduct. That conduct must be specifically defined by the applicable state law, as written or

---

1. Section 1462 provides in pertinent part: "Whoever brings into the United States, or any place subject to the jurisdiction thereof, or knowingly uses any express company or other common carrier, for carriage in interstate or foreign commerce—
    (a) any obscene, lewd, lascivious, or filthy book, pamphlet, picture, motion-picture film, paper, letter, writing, print,

or other matter of indecent character.
. . .
"Shall be fined not more than $5,000 or imprisoned not more than five years; or both, for the first such offense, and shall be fined not more than $10,000 or imprisoned not more than ten years, or both, for each such offense thereafter."

authoritatively construed [footnote omitted]." 413 U.S. at 23–24, 93 S. Ct. at 2614.

*Miller* gave examples to illustrate the degree of specificity called for by the new standards.[2] In a companion case to *Miller,* the Court ruled that the new standards apply equally to federal statutes. *12 200-ft. Reels, supra,* 413 U.S. at 139, 93 S.Ct. 2665.

■■■ On its face, § 1462 contains no description of specific conduct as called for by *Miller.* Nor has it been authoritatively construed to include such description. In the *Miller* group of cases, however, the Supreme Court anticipated a vagueness challenge to § 1462 (413 U.S. at 24 n. 6, 93 S.Ct. at 2615):

> "We do not hold . . . that all States other than Oregon must now enact new obscenity statutes. Other existing state statutes as construed heretofore or hereafter, may well be adequate. See United States v. 12 200-ft. Reels of Film, *post,* 413 U.S. at 130 n. 7, 93 S.Ct. 2665."

In the footnote in *12 200-ft. Reels of Film* referred to, the Court stated:

> "We further note that, while we must leave to state courts the construction of state legislation, we do have a duty to authoritatively construe federal statutes where 'a serious doubt of constitutionality is raised . . .' and 'a construction of the statute is fairly possible by which the question may be avoided.' [citations omitted] If and

when such a 'serious doubt' is raised as to the vagueness of the words 'obscene,' 'lewd,' 'lascivious,' 'filthy,' 'indecent,' or 'immoral' as used to describe regulated material in 19 U.S.C. § 1305(a) and 18 U.S.C. § 1462, see United States v. Orito, *post,* 413 U.S. at 140 no. 1, 93 S.Ct. 2674, 2676, we are prepared to construe such terms as limiting regulated material to patently offensive representations or descriptions of that specific 'hard-core' sexual conduct given as examples in Miller v. California, *ante,* 413 U.S. at 25, 93 S.Ct. 2607. [citation omitted].

The intention of the Supreme Court has been expressed so forcefully that I feel bound so to construe § 1462. Therefore, § 1462 reaches dissemination of material only if the material depicts or describes:

(a) Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated.

(b) Patently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals.

§ 1462 remains subject to widely varying interpretations of such phrases as "patently offensive," "ultimate sexual acts," and "lewd exhibition of the genitals." But such vagueness is constitutionally permissible. Roth v. United States, 354 U.S. 476, 491, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957).[3]

---

2. "It is possible, however, to give a few plain examples of what a state statute could define for regulation under the second part (b) of the standard announced in this opinion, *supra*:
   (a) Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated.
   (b) Patently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals." 413 U.S. at 25, 93 S.Ct. at 2615.

3. *Roth* upheld the constitutionality of 18 U.S.C. § 1461 which proscribes the mailing of material which is "obscene, lewd, lascivious, or filthy . . . [or] of an indecent char-

acter." *Roth* recognized (354 U.S. at 491–492, 77 S.Ct. at 1313):
   ". . . that these terms of obscenity statutes are not precise. This Court, however, has consistently held that lack of precision is not itself offensive to the requirements of due process. '. . . [T]he Constitution does not require impossible standards'; all that is required is that the language 'conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices. . . .' United States v. Petrillo, 332 U.S. 1, 7–8, 67 S.Ct. 1538, 91 L.Ed. 1877. These words, applied according to the proper standard for judging obscenity, already discussed, give adequate

Defendants contend that neither this court nor the Supreme Court has authority to reconstrue § 1462 to satisfy the *Miller* standards. They argue that the definition of obscenity established in *Roth* and further elaborated in the plurality opinion in Memoirs v. Massachusetts, 383 U.S. 413, 86 S.Ct. 975, 16 L. Ed.2d 1 (1966), has become an integral part of § 1462; that Congress' failure to alter the *Memoirs* test constitutes Congressional adoption of it; that the power of the federal courts extends only to invalidating § 1462 and that a new construction of the statute consistent with *Miller* can be fashioned only by Congress.

■ Assuming the *Memoirs* definition was controlling Supreme Court authority, defendants' contention is not persuasive. The Supreme Court on other occasions has overruled its own prior statutory interpretations. See, e. g., Boys Market v. Retail Clerks Union, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970) (Norris-LaGuardia Act held not to bar injunction against strike in breach of no-strike clause); James v. United States, 366 U.S. 213, 81 S.Ct. 1052, 6 L.Ed.2d 246 (1961) (embezzled funds held to be taxable income of the embezzler). Both *Boys Market* and *James* rejected contentions that congres-

sional silence precluded the Court from overruling its prior holding (James v. United States, 366 U.S. 213, 220, 81 S. Ct. 1052, 1056 (1961) (Warren, C. J., concurring)):

> "But the fact that Congress has remained silent or has re-enacted a statute which we have construed, or that congressional attempts to amend a rule announced by this Court have failed, does not necessarily debar us from re-examining and correcting the Court's own errors [citations omitted].

I find no significance in the distinction that the new construction of § 1462 spelled out in *Orito* and adopted in this opinion results from a constitutional interpretation while the new constructions set down in *James* and *Boys Market* did not. I conclude that I am free to construe § 1462, and that as construed herein § 1462 is not unconstitutionally vague.

### Fair Notice

Defendants argue that the *Miller* definition of the limits on regulation of obscenity changes in several ways detrimental to them the prior authoritative definition set forth in Memoirs v. Massachusetts, 383 U.S. 413, 418, 86 S.Ct. 975, 16 L.Ed.2d 1 (1966) (plurality opinion).[4] They maintain that applica-

---

warning of the conduct proscribed and mark '. . . boundaries sufficiently distinct for judges and juries fairly to administer the law. . . . That there may be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls is no sufficient reason to hold the language too ambiguous to define a criminal offense. . . .' *Id.* at 7, 67 S.Ct. 1538. [footnotes omitted]."

4. *Miller* held (413 U.S. at 24, 93 S.Ct. at 2615):

"The basic guidelines for the trier of fact must be (a) whether 'the average person, applying contemporary community standards' would find that the work taken as a whole, appeals to the prurient interest, [citation omitted]; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c)

whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value."

The *Memoirs* plurality had offered these guidelines (383 U.S. at 418, 86 S.Ct. at 977) (Brennan J., joined by Warren, C. J., and Fortas, J.):

". . . [I]t must be established that (a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value.

*Roth* defined obscenity in these terms (354 U.S. at 489, 77 S.Ct. at 1311):

"[W]hether to the average person applying contemporary community standards the dominant theme of the material taken as a whole appeals to prurient interest. [footnote omitted]"

tion of the *Miller* definition to conduct alleged in the indictment to have taken place prior to the date of *Miller* would violate the fair notice requirement of due process. I infer from defendants' demand for dismissal that they urge that the *Memoirs* definition cannot be applied to them because it is no longer law; that the *Miller* definition cannot be applied to them because they would not have had fair notice of it; that there is no obscenity standard which may be applied to them and, therefore, the indictment must be dismissed.

The government responds that the *Miller* definition is consistent with the earlier definition in *Roth*; that the *Memoirs* definition was never controlling since it was never adopted by a majority of the Supreme Court; that the *Miller* elaboration of *Roth* can be applied to defendants without denying them due process.

Defendants discern three changes from *Memoirs* (apart from the specific conduct requirement) in the *Miller* definition: (1) with respect to the question of appeal to prurient interest, national "contemporary community standards" have been replaced by state standards; (2) the determination whether portrayals of sexual matters are patently offensive is to be determined strictly by reference to specific conduct defined by law and no longer by reference to contemporary community standards; (3) First Amendment protection is now limited to works which have serious literary, artistic, political, or scientific value and need no longer be extended to every work with any redeeming social value.

■ I conclude that fair notice would not be violated even if state rather than national standards were to be applied to defendants. The question of which standards apply had been unsettled prior to *Miller* and Kaplan v. California, 413

U.S. 115, 93 S.Ct. 2680, 37 L.Ed.2d 492 (1973). Compare Jacobellis v. Ohio, 378 U.S. 184, 192–195, 84 S.Ct. 1676, 12 L. Ed.2d 793 (1964) (Brennan, J. joined by Goldberg, J.) (national standards) with *id.* at 200–201, 84 S.Ct. 1676 (Warren, C. J. joined by Clark, J. dissenting) (local standards), and with Manual Enterprises v. Day, 370 U.S. 478, 488, 82 S.Ct. 1432, 8 L.Ed.2d 639 (1962) (Harlan, J.) and *Roth,* 354 U.S. at 500–508, 77 S.Ct. 1304 (Harlan, J. concurring and dissenting) (national standard for federal prosecutions, state standards for state prosecutions). The question whether a uniform national standard should govern federal prosecutions remains open. I need not decide presently whether a national or a state standard is to be applied in this case.

■ Defendants misread *Miller* in concluding that contemporary community standards no longer are to be considered in determining whether material is patently offensive. While (b) of the *Miller* definition omits the words "contemporary community standards," *Miller* elsewhere states that whether the specifically defined conduct is patently offensive still is to be determined by reference to these standards. 413 U.S. at 30, 93 S.Ct. 2607.

■ The replacement of the "utterly without redeeming social value" test by the "lacks serious values" test raises an important fair notice issue. The Court of Appeals for the Fifth Circuit recently dealt with this issue in United States v. Thevis, 484 F.2d 1149 (5th Cir. 1973). Prior to *Miller*, the defendants in *Thevis* had been convicted under the *Memoirs* definition of violating § 1462. On appeal after *Miller* was decided, defendants argued that the *Memoirs* definition could no longer be applied in light of *Miller* and that *Miller* itself could not be applied because of *ex post facto* considerations.[5]

5. The prohibition on *ex post facto* laws in the Constitution, Art. I, §§ 9, 10, applies only to legislative action. See James v. United States, 366 U.S. 213, 247 and n. 3, 81 S.Ct. 1052 (1966) (Harlan, J. concurring and dissenting). An overriding judicial decision is not subject to the prohibition. But the requirement of "fair notice," or "warning," imposes substantially the same restraint on the courts as the ex post facto

The Fifth Circuit held in *Thevis* that *Memoirs* was the prior authoritative limit on obscenity regulation. It based this conclusion on recognition in *Miller* of *Memoirs* as the prior definition (484 F.2d at 1154):

> "[W]e note that the Supreme Court in *Miller* stated specifically that *Memoirs* was 'correctly regarded at the time of trial as limiting state prosecution under controlling case law.' 413 U.S. at 30, 93 S.Ct. at 2618, 37 L.Ed. 2d at 435."

*Thevis* ruled that *ex post facto* considerations barred application to the defendants of any portion of *Miller* that withdrew constitutional prosecution accorded by *Memoirs*. It also ruled that insofar as *Miller* expanded constitutional protection, defendants were to be judged by the more protective standard. Accord, United States v. Palladino, 490 F.2d 499 (1st Cir. 1974).[6]

*Thevis* noted that *Miller*'s rejection of *Memoirs* was based on the fact that *Memoirs* "imposed greater burdens on the regulation of such [pornographic] materials than was demanded by the Constitution." 484 F.2d at 1154. Thus, *Thevis* could not accept defendants' contention that neither *Memoirs* nor *Miller* could be applied:

> "We are unable to conclude from the Court's wholesale remand of these cases, without more, that the Court, concerned as it was for strengthening the power to regulate pornography, chose gratuitously to eliminate constitutionally-valid law that would otherwise be available in prosecuting pending obscenity cases." *Id.*

*Thevis* denied the motion to dismiss the entire indictment, and reviewed each count under the test that each conviction which could not be sustained under both *Memoirs* and *Miller* was to be reversed.

I agree with the Fifth Circuit's refusal to dismiss the indictment. Apart from the issue of vagueness dealt with above, *Miller* represents at most a relaxation of the prior standard of First Amendment protection. It would make little sense, and would be contrary to the intent of *Miller*, to hold that a constitutional ruling allowing more stringent regulation of sexually oriented materials deprives the government of authority to pursue pending prosecutions under the prior, more restrictive, standard. Therefore, I will deny the motion to dismiss.

## The Definition to Govern this Case

I have difficulty with the *Thevis* reasoning that *Miller* recognized *Memoirs* as the prior controlling constitutional standard.[7] In order to decide whether

---

clause imposes on Congress and the state legislatures.

6. *Palladino* involved convictions for mailing obscene matter in violation of 18 U.S.C. § 1461. On remand for reconsideration in light of *Miller*, *Palladino* held (490 F.2d at 500–501):

"The defendants are caught in a period of transition, their prosecutions having taken place before the *Miller* decisions. They cannot fairly be subjected to penalties for violation of rules established after their actions. On the other hand, the remand of the entire group of pending obscenity prosecutions suggests that to the extent that *Miller* creates protections not afforded by prior standards, these cannot be denied to persons whose prosecutions have not terminated. Therefore with due regard for First Amendment rights we adopt the position that on remand the ma-

terial allegedly in violation of 18 U.S.C. § 1461 must be found to be obscene under both the *Miller* and the *Roth-Memoirs* [footnote omitted] standards or the defendants must be acquitted. See United States v. Thevis, 484 F.2d 1149 (5th Cir. 1973)."

7. In *Miller* the Supreme Court reviewed a conviction for distributing obscene material in violation of a California statute that limited prosecution to "matter which is utterly without redeeming social importance." Cal. Penal Code § 311 quoted in *Miller*, 413 U.S. at 17 n. 1, 93 S.Ct. at 2611. The *Miller* observation, relied on by *Thevis* and *Palladino*, that *Memoirs* "was correctly regarded at the time of trial as limiting state prosecution under the controlling case law" must be read together with the immediately preceding statement that "this case was tried on the theory that the California obscenity statute sought to incorporate the tripartite test of

fair notice bars full application of the *Miller* definition at trial in this case, I must look to the state of the law in the fall of 1969 at the time of the acts charged in the indictment. Since the issue has been briefed in relation to the motion to dismiss, its determination at this point does not risk prejudice to the parties and will facilitate their trial preparation.

Although never commanding a majority of the Court, the *Memoirs* definition served as the operative standard for Supreme Court review of obscenity convictions for over five terms. While only three Justices joined in the *Memoirs* plurality, at least two other Justices supported even more stringent limits on obscenity regulation. Justices Black and Douglas consistently maintained that federal and state government were prohibited by the First and Fourteenth Amendments from in any way controlling dissemination of written or illustrated matter on grounds of obscenity.[8]

Unable to agree on a majority view, the Court began in Redrup v. New York, 386 U.S. 767, 87 S.Ct. 1414 (1967), the practice of summarily reversing obscenity convictions where at least five Justices, applying their separate tests, concurred that the materials disseminated were protected by the First Amendment. Between the *Redrup* decision in May, 1967, and defendants' first alleged violation in October, 1969, the Supreme Court summarily reversed nineteen obscenity convictions.[9] In the one conviction summarily affirmed during this period, the trial court had found the challenged material obscene under the *Memoirs* definition. Landau v. Fording, 388 U.S. 456, 87 S.Ct. 2109, 18 L.Ed.2d 1319 (1967).[10]

As of October, 1969, the Courts of Appeals for the First, Second, Fourth and Ninth Circuits had applied the *Memoirs* definition.[11] No Court of Appeals had rejected it.[12] Within the Seventh Cir-

---

Memoirs," 413 U.S. at 30–31, 93 S.Ct. at 2618. I find the former passage ambiguous as to whether *Miller* viewed *Memoirs* as only the controlling California standard, or also as the controlling constitutional standard. At the outset of the *Miller* opinion, the Court described the constitutional standard set forth in *Roth* as a balancing test between free expression of ideas and the social interest in order and morality. It characterized the *Memoirs* plurality standard as "a drastically altered test" that gave absolute protection to any material not "utterly without redeeming social value." *Miller*, 413 U.S. at 20–22, 93 S.Ct. 2607. The Court also remarked, *Id.* at 22 n. 3, 93 S.Ct. 2607, that only "the necessity of circumstances" justified the series of summary reversals of obscenity convictions which followed Redrup v. New York, 386 U.S. 767, 87 S.Ct. 1414, 18 L.Ed.2d 515 (1967). Although not directly controverting the *Thevis* interpretation, these remarks raise additional doubts as to whether *Miller* viewed *Memoirs* as a constitutional standard. I conclude that *Miller* did not address the issue of the prior constitutional standard and that it comes to this court as an issue of first impression.

8. Ginzburg v. United States, 383 U.S. 463, 476, 482, 86 S.Ct. 942, 16 L.Ed.2d 31 (1966) (Black, J. and Douglas, J., dissenting); Jacobellis v. Ohio, 378 U.S. 184, 196, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964) (Black, J.,

joined by Douglas, J., dissenting), *Roth, supra*, 354 U.S. at 508, 77 S.Ct. 1304, 1 L.Ed. 2d 1498 (Douglas, J., dissenting).

9. These cases are listed in Paris Adult Theatre I v. Slaton, 413 U.S. 49, 82–83 n. 8, 93 S.Ct. 2628, 37 L.Ed.2d 446 (Brennan, J. dissenting).

10. The trial court decision in *Landau* is so interpreted in Luros v. United States, 389 F.2d 200, 206 n. 15 (8th Cir. 1968). In United States v. A Motion Picture Film, 404 F.2d 196, 201 (2nd Cir. 1968) (Friendly, C. J., concurring), the argument that *Landau* marked a rejection of *Memoirs* or of Jacobellis v. Ohio, 378 U.S. 184, 84 S.Ct. 1676 (1964), was again rejected.

11. Books Inc. v. United States, 358 F.2d 935 (1st Cir. 1966); United States v. One Carton Positive Motion Picture Film, 367 F.2d 889 (2nd Cir. 1966); United States v. 25,000 Magazines, 254 F.Supp. 1014 (D.Md. 1966), aff'd sub nom., United States v. Central Magazine Sales, Ltd., 381 F.2d 821 (4th Cir. 1967); Armijo v. United States, 384 F. 2d 694 (9th Cir. 1967).

12. Even the one Court of Appeals which subsequently rejected *Memoirs* in May, 1973, would probably have followed it in 1969. By an 8–7 vote, the Fifth Circuit rejected *Memoirs* as the controlling definition in United States v. Groner, 479 F.2d 577 (5th Cir.

cuit, one district court had applied *Memoirs*. Henley v. Wise, 303 F.Supp. 62, 69 n. 2 (N.D.Ind.1969).[13]

From the viewpoint of defendants and others in the magazine publication and distribution business in the fall of 1969, the conclusion that *Memoirs* was the controlling law followed ineluctably from the three reversals in *Redrup*, the subsequent twenty summary orders of the Supreme Court in obscenity cases, and the application of the *Memoirs* definition by four Courts of Appeals including the two (the Second and Ninth Circuits) which deal with the greatest number of obscenity cases. Had I been called on at that time to decide the constitutional limits on obscenity regulation, I would have followed the *Memoirs* definition.[14]

▮ The *Miller* limitation of First Amendment protection to material having serious literary, artistic, scientific, or political value is plainly a withdrawal of the protection accorded by *Memoirs* to all material that was not utterly without redeeming social value.[15] I conclude that *Memoirs* was the controlling law at the time of the acts charged in the indictment and that application of the *Miller* "lacks serious value" test to dissemination of material which took place prior to *Miller* is barred by the fair notice requirement. See Rabe v. Washington, 405 U.S. 313, 92 S.Ct. 993, 31 L.Ed. 2d 258 (1972); Bouie v. Columbia, 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1963).[16] At trial, the standard will be

1973) (*en banc*). In *Thevis, supra,* decided five months after *Groner,* the Fifth Circuit made no mention of *Groner.* Aware that interpretation of such an omission is highly speculative, I suggest that *Groner* presented no difficulty to the *Thevis* court because the acts charged in the *Thevis* indictment took place in 1970: "We do not read this [vacation of judgments in *Miller* and other obscenity cases] as precluding our application of the *Memoirs* standard to materials involved in transactions occurring in 1970." 484 F.2d at 1154. *Groner* relied heavily on the 1972 decision in Kois v. Wisconsin, 408 U.S. 229, 92 S.Ct. 2245, 33 L.Ed.2d 312 (1972). Although *Thevis* purportedly relied on recognition of *Memoirs* by *Miller,* its unhesitating approval of the *Memoirs* standard for 1970 transactions indicates independent recognition of *Memoirs* as the controlling definition prior to *Kois* and *Groner.*

13. The Court of Appeals for the Seventh Circuit did not face the constitutional limits on obscenity regulation until January, 1973. At that time, it applied the *Memoirs* definition. Cinecom Theatres Midwest St., Inc. v. City of Fort Wayne, 473 F.2d 1297 (7th Cir. 1973).

14. I did apply *Memoirs* in February, 1973, in Amato v. Divine, 354 F.Supp. 805 (W.D. Wis.1973), aff'd, 496 F.2d 441 (7th Cir. 1974).

15. The difference between the *Miller* test and the *Memoirs* test is illustrated in *Thevis, supra. Thevis* ruled that the convictions appealed would be reversed if they could not be upheld under both *Miller* and *Memoirs.* The court then examined twelve magazines on which convictions were based and con-

cluded that all twelve were obscene under the *Miller* "lacks serious value" test but that only six were obscene under the *Memoirs*' "utterly without redeeming social value" test. 484 F.2d at 1155–1157.

16. In support of its argument that *Miller* may be applied *in toto* to defendants, the government cites Ginzberg v. United States, 383 U.S. 463, 86 S.Ct. 942 (1966). Ginzburg was convicted of mailing obscene publications in violation of 18 U.S.C. § 1461. The trial court had admitted over defendant's objection evidence of "pandering" (i. e. advertising designed to appeal predominantly to prurient interest). The Supreme Court affirmed, holding that through advertising designed "to give the publication a salacious cast, petitioners reinforced what is conceded by the Government to be an otherwise debatable conclusion [of obscenity]." 383 U.S. at 471, 86 S.Ct. at 948. The Court ruled that evidence of pandering "may support the determination that material is obscene even though in other contexts the material would escape such condemnation." *Id.* at 476, 86 S.Ct. at 950. The government argues here that Ginzburg was convicted under the new criterion of "pandering" of which he had no notice; that the evidence against him was probably not sufficient to sustain a conviction without consideration of pandering; that the Supreme Court's affirmance of the conviction means that due process is not violated by application of a more inclusive standard of obscenity without notice of the new standard to the person against whom it is applied.

I do not agree that *Ginzburg* calls for application of *Miller* to the present defendants. While the "lacks serious value" criterion set

that the materials cited in the indictment are protected by the First Amendment unless shown to be "utterly without redeeming social value." Since the other elements of the *Miller* definition do not represent a rejection of prior law,[17] they may be applied to defendants without violating due process of law.

## ORDER

It is hereby ordered that defendants' motion to dismiss is denied.

forth in *Miller* represents an express rejection of the corresponding criterion in *Memoirs*, the *Ginzburg* pandering test was a consistent elaboration of the *Roth* standard that "the dominant theme of the material taken as a whole appeals to a prurient interest in sex." *Ginzburg* simply added that "in close cases evidence of pandering may be probative with respect to the nature of the material in question." *Ginzburg*, 383 U.S. at 474, 86 S.Ct. at 949.

17. See p. 141, *supra.*