[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No.  13-14350
_____

D.C. Docket No. 1:07-cr-00018-WLS-TQL-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

FRANK RUSSELL MCCOY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(March 12, 2015)

Before TJOFLAT and JILL PRYOR, Circuit Judges, and MOODY,* District Judge.

PER CURIAM:

_____

*Honorable James S. Moody, Jr., United States District Judge for the Middle District of
Florida, sitting by designation.

Following a bench trial, Frank Russell McCoy appeals his conviction of one count of Transportation of Obscene Matters in violation of 18 U.S.C. § 1462. After thoroughly reviewing the record and considering the parties' briefs, and with the benefit of oral argument, we affirm.

I.

McCoy maintained a website at young-stuff.com from his home in Minnesota. On this website, McCoy posted more than 200 stories that he authored or edited and that described in graphic and explicit detail the sexual abuse, rape, and torture of young children. McCoy's website provided a link for visitors to access the stories. McCoy's young-stuff.com website came to the attention of federal law enforcement officers in 2004, when agents were conducting a separate investigation and found 18 stories downloaded from the website on a suspect's computer in Georgia. On March 22, 2005, Special Agent Cory Brant visited the young-stuff.com website and downloaded more than 200 accessible stories. Over the course of Brant's investigation, McCoy provided Brant with links to three websites that contained McCoy's stories.

McCoy's stories included, but were not limited to: a father having vaginal intercourse and ejaculating inside the cervix of his six-year-old daughter; a father digitally penetrating his seven-year-old daughter; a father having oral sex with,

2

ejaculating into the mouth of, digitally and vaginally penetrating, and performing oral sex on his six-year-old daughter; a father having vaginal intercourse with his daughter and torturing and murdering her; and an adult uncle masturbating and ejaculating, fondling, and having vaginal intercourse with his four-year-old niece while the girl's mother and father masturbated and video-taped this sexual abuse.

On June 13, 2007, a one-count indictment was returned by the grand jury in the Albany Division of the Middle District of Georgia charging McCoy with a single violation of 18 U.S.C. § 1462.

McCoy waived his right to a jury trial and was therefore tried before the district court. The parties stipulated to facts establishing each element of the charged offense except the obscenity element. Specifically, McCoy stipulated to the first two elements of section 1462, (1) that he knowingly used or caused to be used an interactive computer service to transport certain materials in interstate or foreign commerce, and (2) that he knew, at the time, the content of the materials were sexual in nature. McCoy challenged only the third element of his crime that required the government prove beyond a reasonable doubt that the materials were "obscene."

The government introduced into evidence all of McCoy's stories retrieved from his websites, totaling approximately 276 stories. The government focused its

3

trial presentation on the 18 stories that prompted Brant's investigation. The government requested that the district court render a special verdict with respect to each of the 18 stories.

McCoy objected to the government's proposed approach; he argued that the focus on only 18 of his stories and request for a special verdict constructively amended the indictment. McCoy contended that all of the more than 200 stories Brant downloaded were the subject of the single-count indictment. He also argued that, under *Miller v. California*, 413 U.S. 15 (1973), the district court had to consider all of the stories collectively to determine whether, taken as a whole, they qualified as obscene.

During the bench trial, McCoy relied on expert testimony from Gary Richardson, Ph.D., a professor and chair of the English department at Mercer University, who specialized in nineteenth-century drama, in support of his defense that the stories were not obscene. Richardson opined that the stories had serious literary value under a narrow definition of literary value.

Following a two-day bench trial, McCoy was convicted of using an interactive computer service for the transportation of obscene material in interstate and foreign commerce, in violation of 18 U.S.C. § 1462. The district court expressed its verdict in two orders, a "Bench Opinion," and an order denying

4

McCoy's motion for judgment of acquittal under Fed. R. Crim. P. 29.  In concluding that the stories were "obscene," the district court focused specifically on the 18 stories.  The district court rejected McCoy's argument that the government's request for a special verdict constructively amended the indictment because the request did "not require any deviation from the factual allegations within the indictment," and "the number of obscene matters transported [was] not an element of the crime" under section 1462.

The district court denied the government's request for a special verdict on each of the 18 stories, concluding that "a special verdict is neither appropriate nor necessary."  The district court concluded that the 18 stories were a representative sample of McCoy's stories as a whole.

The district court noted that Richardson's analysis of the stories did not "redeem [McCoy's] work."  Specifically, despite Richardson's opinion, the district court found "no literary value within the murk of rape, incest, abuse, molestation, and vivid descriptions of the violations of children as composed within [McCoy's] work."  The district court concluded that the record "establishe[d] a clear purpose to appeal to prurient interest, especially with prepubescent female children."

McCoy's appeal presents the following issues: whether the district court failed to judge McCoy's work as a whole; whether the district court correctly

5

applied *Miller*; and whether the district court constructively amended the indictment.

## II.

Generally, a conviction must be upheld if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *U.S. v. Mintmire*, 507 F.3d 1273, 1289 (11th Cir. 2007) (emphasis in original). We view "the evidence in the light most favorable to the government, with all reasonable inferences and credibility choices made in the government's favor.'" *U.S. v. Harris*, 20 F.3d 445, 452 (11th Cir. 1994). In obscenity prosecutions, however, we conduct "an independent review of the material in question and an independent evaluation of the material in light of the *Miller* criteria," to ensure that the judgment does not intrude on First Amendment rights. *U.S. v. Bagnell*, 679 F.2d 826, 835 (11th Cir. 1982).

## III.

The meaning of "obscene" in 18 U.S.C. § 1462 derives from First Amendment law. *See U.S. v. Thevis*, 484 F.2d 1149, 1155 (5th Cir. 1973).[1] Generally, the First Amendment prohibits the punishment of speech based on its

---

[1] This Court has adopted as binding precedent all Fifth Circuit decisions issued prior to October 1, 1981. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

6

content.  The Supreme Court established in *Miller v. California* that obscenity is not protected by the First Amendment.  413 U.S. 15 (1973).  *Miller* limits the category of obscenity to material that meets all of three requirements: 1) "the average person, applying contemporary community standards, would find that the work, taken as a whole, appeals to the prurient interest," 2) the average person, applying contemporary community standards, would find that "the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by ... law," and 3) "the work, taken as a whole, lacks serious literary, artistic, political, or scientific value."  *Id.* at 24, 30 (internal quotations and citations omitted).

McCoy first argues that the district court clearly erred when it failed to judge his work as a whole; rather, the district court focused on the 18 stories that the government presented.

An accurate determination of what constitutes the "work as a whole" is critical to the correct application of the *Miller* standard.  *See Ginzburg v. U.S.*, 383 U.S. 463, 466 n. 5 (1966); *Penthouse Int'l, Ltd. v. McAuliffe*, 610 F.2d 1353, 1367-74 (5th Cir. 1980).  A work is not necessarily obscene if one portion could be deemed to lack societal value when considered separately and in isolation.  *See Penthouse*, 610 F.2d at 1372 (issue of Playboy magazine not obscene even though it "contains items which, standing alone, would be found obscene").

7

The record reflects that, although the district court focused on 18 specific stories, all of the stories were introduced into evidence. And our review of the 276 stories demonstrates that they focus on one or two standard plots and describe in graphic and explicit detail the sexual abuse, rape, murder, and torture of young children. McCoy himself described the stories as mostly involving incest, pedophilia, and pregnancy. In light of these common factors, we conclude that the district court did not err when it focused on the 18 stories as a representative sample of all of McCoy's stories collectively. We are unpersuaded by McCoy's arguments to the contrary.

McCoy next asserts a number of arguments in support of his contention that the district court did not correctly apply the third prong of the *Miller* standard. McCoy contends that the district court erred when it disregarded Richardson's expert testimony. McCoy also argues that the government should have presented evidence to counter Richardson's expert testimony. We reject these arguments because McCoy's stories, introduced into evidence, constituted the "best evidence" of whether the stories lacked serious literary, artistic, political, or scientific value. *See Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 56-57 (1973). In *Paris Adult Theatre I,* the Supreme Court held that a district court did not err when it did not "require 'expert' affirmative evidence" that the materials in an

8

obscenity prosecution were obscene "when the materials themselves [were] actually placed in evidence." *Id.* at 56. We noted in *Luke Records, Inc. v. Navarro*, 960 F.2d 134, 137 (11th Cir. 1992), that "the law does not require expert testimony in an obscenity case."

The district court did not err when it disregarded Richardson's expert opinion because, as the finder of fact, the district court could come to a different conclusion about the stories' value based on the district court's review of the stories themselves. *Penthouse* instructs that a work that reflects some literary value is not saved if the work is predominantly obscene. *See* 610 F.2d at 1372 ("The issue with respect to 'Penthouse' and 'Oui' is close but the numerous pictorials and obscene letters were not saved by the articles possessing some literary merit.").

Also, the government was not required to introduce expert testimony establishing that the stories were obscene because the stories themselves were placed in evidence. *See Thevis*, 484 F.2d at 1153 ("expert testimony on the part of the prosecution is not necessary in cases where the materials themselves are available for inspection by the finder of fact."). Simply put, expert testimony on the value of McCoy's stories was unnecessary for the finder of fact to ascertain whether the stories, taken as a whole, lacked serious artistic, scientific, literary, or

9

political value.

McCoy also argues that the district court improperly considered his purpose in creating and disseminating the stories. We disagree because the district court's opinion makes clear that it did not weigh McCoy's purpose in creating the stories above and beyond the actual content of the stories. The assessment of McCoy's purpose was not a dispositive factor in the district court's analysis. Indeed, with respect to the third prong of the *Miller* standard, the district court concluded that "[McCoy's] stories present as ordinary and 'consensual,' patently offensive accounts of various explicit sexual acts, abuse, violence and rape of prepubescent female children as young as four years of age to appeal to the prurient interest of the reader."

Moreover, based on our independent review of McCoy's stories, we conclude that they lack serious literary, artistic, political, or scientific value. The stories graphically describe sexual acts, incestuous relationships, molestation, masturbation, sexual abuse, rape, intercourse, violent acts, and arguably the torture and/or murder of very young children. The stories contain tenuous plots at best. Simply put, the stories are precisely the type of "'hard core' pornography" that the Supreme Court has made clear is unprotected under the First Amendment. *See Miller*, 413 U.S. at 29.

10

Finally, McCoy argues that the district court's focus on 18 stories as a representative sample of all of his stories constructively amended the indictment. Under the Fifth Amendment, "a defendant can only be convicted for a crime charged in the indictment." *U.S. v. Keller*, 916 F.2d 628, 633 (11th Cir. 1990). "When considering an argument that an indictment was constructively amended, we are required to determine whether the prosecutor's actions or the court's instructions, viewed in context, resulted in the expansion of an indictment either literally or in effect." *U.S. v. Behety*, 32 F.3d 503, 508-09 (11th Cir. 1994) (internal citations omitted).

We reject McCoy's contention that the indictment was constructively amended. The indictment alleged that McCoy violated section 1462 by using an interactive computer service for the transportation of "obscene stories," or "obscene 'fantasy' stories" that were downloaded from McCoy's websites "into the Middle District of Georgia and elsewhere." The government introduced into evidence all of the stories downloaded from McCoy's websites and the district court found McCoy guilty only after concluding that those stories were obscene under the *Miller* standard. The district court's focus on 18 of McCoy's stories did not deviate from the allegations in the indictment. Nor did the district court's focus on the 18 stories expand the indictment in any way. Thus, McCoy's claim

11

of a constructive amendment is without merit.

IV.

For the foregoing reasons, we affirm McCoy's conviction.

**AFFIRMED.**