**UNITED STATES of America,**
**Appellee,**

v.

**ONE REEL OF FILM.**
**GERARD DAMIANO PRODUCTIONS,**
**INC., Claimant-Appellant.**

**No. 73–1181.**

United States Court of Appeals,
First Circuit.

Heard June 7, 1973.

Decided July 16, 1973.

---

12. The language now appears in Rule 3(c) of the Federal Rules of Appellate Procedure.

John J. Crowley, Jr., Boston, Mass., for appellants.

Frederic R. Kellogg, Asst. U. S. Atty., with whom James N. Gabriel, U. S. Atty., was on brief, for appellee.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

The subject of this forfeiture proceeding brought under 19 U.S.C. § 1305(a) is a film entitled "Deep Throat." Imported from Canada, the film and its container were seized at Logan Airport, Boston, by officers of the United States Customs Service. The United States Attorney for the District of Massachusetts then filed a complaint in the District Court, against which the owner defended. After a trial without jury, the court ordered that the reel of film and container be forfeited to the United States of America for destruction forthwith. An appeal was argued and briefed, and we viewed the film early in June, prior to the time that the Supreme Court rendered decisions in five obscenity and pornography cases, re-examining earlier standards. Miller v. California, ── U.S. ──, 93 S.Ct. 2607, 37 L.Ed.2d 419; Paris Adult Theatre I v. Slaton, ── U.S. ──, 93 S.Ct. 2628, 37 L.Ed.2d

446; United States v. Orito, —— U.S. ——, 93 S.Ct. 2674, 37 L.Ed.2d 513; Kaplan v. California, —— U.S. ——, 93 S.Ct. 2680, 37 L.Ed.2d 492; United States v. 12 200–Ft. Reels of Super 8mm. Film, —— U.S. ——, 93 S.Ct. 2665, 37 L.Ed.2d 500 (1973). The questions presented is whether or not to affirm the judgment of the district court in light of the Supreme Court's latest pronouncements.

■ The hearing in the district court was extensive, and the court's findings detailed and sensitive to the requirements of the law as it then was. Assuming that the First Amendment forbids suppression unless the film "is found proscribably obscene," *see* United States v. Thirty-Seven Photographs, 402 U.S. 363, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971), the court found that the film was imported for commercial use only and limited its inquiry to intended commercial exhibition "to audiences of adults in a public theatre." Pandering was not involved. To determine what was obscene and not protected under the First Amendment the court applied the *Roth-Memoirs* tests,[1] as we recently restated them in United States v. Palladino, 475 F.2d 65, 69–70 (1st Cir. 1973),

> . . . (1) do the materials, taken as a whole, appeal primarily to prurient interests of the average adult (or, if directed to deviants, to the prurient interest of the intended group, Mishkin v. New York, 383 U.S. 502 [86 S.Ct. 958, 16 L.Ed.2d 56] (1966))?;

(2) are the materials patently offensive because they affront contemporary community standards relating to sexual matters?;[2] and (3) are the materials utterly without redeeming social value? [footnotes omitted].

The court went on to make findings as to the content and nature of "Deep Throat." It found that it contains scenes of explicit heterosexual intercourse, including group sex, and emphasizes various scenes of explicit penetration, fellatio, cunnilingus, female masturbation, anal sodomy, and seminal ejaculation. It found that

> [t]hey dominate the film in depiction and running time to such extent that, following the opening innocuous few minutes (probably not more than eight) until "The End" flashes on the screen, scenes of sexual acts cascade one upon the other with minor interruptions. All these are accompanied by musical sounds and some dialogue, and enlivened on two occasions with bells ringing, bombs and rockets bursting. Camera angles and close-ups give maximum emphasis in time and dimensions to the genitalia during the sexual exhibitions.

■■ Our own viewing of the film revealed nothing different from the district court's. The film's plot depicts the adventures of Linda Lovelace, a girl who finds life dull because numerous sexual encounters do not result in her hearing "bells, bombs, dams bursting

1. Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957); Memoirs v. Massachusetts, 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1 (1966).

2. The court noted our comment in *Palladino*, 475 F.2d at 69, n. 2, that the referent for community standards "is the nation." While it is now clear, *see* Miller v. California, *supra*, —— U.S. ——, 93 S.Ct. 2607, 36 L.Ed.2d 419 (1973), that a national community standard is not required in state prosecutions, the Supreme Court's recent decisions leave unclear whether proceedings under federal statutes, "reaching . . . to all parts of the United States whose population reflects many different ethnic and cultural backgrounds," still require, as was suggested in Manual Enterprises v. Day, 370 U.S. 478, 488, 82 S.Ct. 1432, 1437, 8 L.Ed.2d 639 (1962), reference to a "national standard of decency." *See* Excellent Publications, Inc. v. United States, 309 F.2d 362, 365 (1st Cir. 1962). Since all parties assumed in the present case that the standard was national, and since we do not read the Supreme Court as requiring a local standard in proceedings under § 1305(a), we find no error in the district court's assumption in this case. Moreover, we find no merit in appellant's argument either that the Government's witness, a sociologist who testified that "Deep Throat" affronted a national community standard, was unqualified, or that there was insufficient evidence from which to find that the film affronted contemporary community standards.

. . . something." Portrayal of her cure, at the hands, literally, of a psychiatrist is occasionally interrupted to portray copulation with and by others. There is little, one might almost say nothing, else. We are thus left with a rarity: a film so single-minded as to fail even the older *Roth-Memoirs* test—unless one is tempted, as plainly a majority of the Supreme Court is not, to find redeeming social value in the explicit portrayal, without more, of sexual congress itself. Moreover, wisely though now perhaps unnecessarily,[3] the Government presented expert witnesses whose testimony adequately, we find, supported its position and the court's findings on the essential elements of the *Roth-Memoirs* test.

The district court concluded that the film, which it found to go "beyond any film which has been examined by the courts", appeals in its dominant theme to prurient interest in sex; that it is patently offensive in that it affronts national contemporary community standards with respect to description and representation of sexual matters; and that it is utterly without redeeming social value.

■ Appellant's attacks on these findings are not persuasive. We recognize a continuing duty of appellate courts in an area involving First Amendment guarantees to make what appellant terms "individual, case-by-case applications of the rules of law." *See* Miller v. California, *supra*, —— U.S. at ——, 93 S.Ct. at 2615; Kois v. Wisconsin, 408 U.S. 229, 231–232, 92 S.Ct. 2245, 33 L.Ed.2d 312 (1972); Roth v. United States, *supra*, 354 U.S. at 497–498, 77 S.Ct. 1304 (Mr. Justice Harlan, concur-

ring and dissenting). The greater latitude now afforded to the proscribing of allegedly obscene materials makes that duty, if anything, greater. We have viewed the film and do not defer mechanistically to the findings below. But our independent viewing of the film as well as our reading of the entire record convinces us that they were correct. *A fortiori* the more relaxed standards announced recently by the Supreme Court were met.

■ We have considered whether the recent revision of standards, occurring since trial and appellate argument, requires remand or rehearing. We think not. One possible object, to consider whether the applicable federal statute is sufficiently definite and limited to meet present standards, was obviated by the Court's decision in one of the five recent cases, United States v. 12 200-Ft. Reels of Super 8mm. Film, *supra*. The Court there reversed a summary decision of the district court holding that 19 U. S.C. § 1305(a), the relevant statute here, was unconstitutional on its face. In footnote 7, the Court went beyond the issues of that case, stating,

> If and when such a 'serious doubt' is raised as to the vagueness of the words 'obscene', 'lewd', 'lascivious', 'filthy', 'indecent', or 'immoral' as used to describe regulated material in 19 U.S.C. § 1350(a) . . . we are prepared to construe such terms as limiting regulated material to patently offensive representations or descriptions of that specific 'hard-core' sexual conduct given as examples in Miller v. California, *supra*. . . . —— U.S. at ——, 93 S.Ct. at 2670.

3. In Paris Adult Theatre I v. Slaton, *supra*, the Court said, —— U.S. at ——, 93 S.Ct. at 2634, "Nor was it error to fail to require 'expert' affirmative evidence that the materials were obscene when the materials themselves were actually placed in evidence." It indicated that hard core pornography " 'can and does speak for itself' ", citing, among other cases, United States v. Wild, 422 F.2d 34, 35–36 (2nd Cir. 1969), cert. denied, 402 U.S. 986, 91 S.Ct. 1644, 29 L.Ed.2d 152 (1971).

Expert assistance, the Court found, is not needed by jurors in obscenity cases, except possibly in ones relating to materials directed "at such a bizarre deviant group that the experience of the trier-of-fact would be plainly inadequate to judge whether the material appeals to the prurient interest." *Id.* at ——, 93 S.Ct. at 2634 n. 6. While expert testimony is not now generally required constitutionally, *compare* United States v. Palladino, *supra*, it remains permitted.

The examples in Miller v. California were, —— U.S. at ——, 93 S.Ct. at 2615,

  (a) Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated.

  (b) Patently offensive representations or descriptions of masturbation, excretary functions, and lewd exhibition of the genitals.

Both examples describe the conduct principally portrayed in "Deep Throat"; the dominant theme of the film is precisely the depiction of such conduct without recognizable forays into other areas which might be said to lend to the work as a whole "serious literary, artistic, political, or scientific value." *Id.* We have no doubt "the average person, applying contemporary community standards" would find that the work taken as a whole, appeals to the "prurient interest", whatever reasonable definition be applied to the latter, admittedly loaded words. If the film does not appeal to "purient interest," it is difficult to know what possible other interest the film attempts to reach.

■ Perhaps the most substantial argument advanced by appellant is that the film, in the words of one expert, ". . . puts forth an idea of greater liberation with regard to human sexuality and to the expression of it." Another expert, along the same line, believes that "many women have an unreasonable fear of the penis" and that both sexes can benefit from watching the love-making techniques employed in the film. The difficulty is that the argument proves too much. We are told by the Supreme Court that obscene material is unprotected by the First Amendment, such material being described as confined to "works which depict or describe sexual conduct." [4] We can only read the recent cases as an express rejection of any argument that pornography itself, because of its liberating impact, has for that reason alone, serious literary, artistic, political, or scientific value. We would be misreading the message unmistakably transmitted by the Supreme Court were we to hold otherwise.

As the findings of the district court affirmatively embrace each of the standards established by the Court—although in certain respects they are addressed to meeting an even narrower standard— and as we have seen the film ourselves and independently find that it is obscene and unprotected, we see no possible reason to remand, especially as the Supreme Court has just addressed itself to the construction and adequacy of the federal statute involved. *See* United States v. 12 200-Ft. Reels of Super 8mm. Film, *supra,* —— U.S. at ——, 93 S.Ct. at 2615, n. 7.

Affirmed.

COFFIN, Chief Judge (concurring).

I concur in the court's opinion. I add these words only to underscore the fact that we continue to apply "national standards" in the judgment of this appeal, notwithstanding the reference to such by the Supreme Court in Miller v. California, —— U.S. ——, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), as involving an "exercise in futility" to define what is "hypothetical and unascertainable". We do so because of the nature of the federal statute with which we deal and because we see no other alternative if we are to participate meaningfully in the review process. As to the former, if 19 U.S.C. § 1305(a), which permits customs seizures, be said to contemplate the application of state or local standards of prurient appeal or patent offensiveness, the few commercial ports of entry for foreign films or literature would be able to

---

4. Unprotected material, besides being so confined, must be specifically defined by the applicable law "as written or authoritatively construed." The offense "must also be limited to works which, taken as a whole, appeal to the prurient interest in sex, which portray sexual conduct in a patently offensive way, and which, taken as a whole, do not have serious literary, artistic, political, or scientific value." Miller v. California, *supra,* 93 S.Ct. at 2615; *see* United States v. 12 200-Ft. Reels of Super 8mm. Film, *supra,* —— U.S. at ——, 93 S.Ct. at 2670 n. 7.

preclude such material from ever reaching other parts of this country where it might not be considered obscene or where regulation, rather than an outright prohibition, might be in effect. I cannot believe that Congress intended to grant that veto power, nor wished to condone the effect on foreign and interstate commerce which might ensue from attempts to circumvent such port of call censorship.

As to the latter, were we to remand for a ruling in accordance with Massachusetts-or-Boston standards, we as a reviewing panel would be two-thirds disabled in passing judgment on prurient appeal and patent offensiveness, for one of us is from Rhode Island and one from Maine. On the other hand, if our function is merely to see that the proper law was applied—or, where there was a jury, that the correct instructions were given—and once satisfied, to accept any ensuing finding, it could be said that such review was in name only, and certainly not the "independent review" by an appellate court which is needed to safeguard First Amendment values. *Miller, supra,* —— U.S. at ——, 93 S.Ct. at 2615.