**UNITED STATES of America,**
**Appellee,**
**v.**
**Joseph N. PALLADINO, Sr., et al.,**
**Defendants-Appellants.**

**No. 72–1005.**

United States Court of Appeals,
First Circuit.

Jan. 7, 1974.

**500**

Herald Price Fahringer, Buffalo, N. Y., with whom John A. Pino, Boston, Mass., was on brief, for defendants-appellants.

Frederic R. Kellogg, Asst. U. S. Atty., with whom James N. Gabriel, U. S. Atty., was on brief, for appellee.

Before COFFIN, Chief Judge, ALD-RICH and CAMPBELL, Circuit Judges.

COFFIN, Chief Judge.

This case, again before us after having been vacated in the Supreme Court, is an appeal by the defendants, father and son, from joint convictions on three counts of a nine-count indictment charging the mailing of obscene matter in violation of 18 U.S.C. § 1461.[1] The Supreme Court remanded this case to us with the direction that we reconsider it in light of Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973); Paris Adult Theatre I v. Slaton, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed. 2d 446 (1973); United States v. Orito, 413 U.S. 139, 93 S.Ct. 2674, 37 L.Ed.2d 513 (1973); Kaplan v. California, 413 U.S. 115, 93 S.Ct. 2680, 37 L.Ed.2d 492 (1973); United States v. 12 200-Ft. Reels of Super 8mm. Film, 413 U.S. 123, 93 S.Ct. 2665, 37 L.Ed.2d 500 (1973).

The primary issue requiring resolution is different in kind from those with which we originally contended. We must now decide to what extent the standards articulated in the recent Supreme Court decisions dealing with state obscenity statutes [2] apply to this federal case retroactively. The defendants are caught in a period of transition, their prosecutions having taken place before the Miller decisions. They cannot fairly be subjected to penalties for violation of rules established after their actions. On the other hand, the remand of the entire group of pending obscenity prosecutions suggests that to the extent that Miller creates protections not afforded by prior standards, these cannot be denied to persons whose prosecutions have not terminated. Therefore with due regard for First Amendment rights we adopt the position that on remand the material allegedly in violation of 18 U.S.C. § 1461 must be found to be obscene under both the Miller and the Roth-Memoirs [3] standards or the defendants must be ac-

---

1. "Every obscene, lewd, lascivious, indecent, filthy or vile article, matter, thing, device, or substance . . . .

    \*     \*     \*     \*     \*

"[i]s declared to be nonmailable matter and shall not be conveyed in the mails or delivered from any post office or by any letter carrier." The original opinion may be found at 475 F.2d 65 (1973).

2. Although United States v. Orito and United States v. 12 200-Ft. Reels of Super 8mm. Film, supra, involved 18 U.S.C. § 1462 and 19 U.S.C. § 1305, respectively, the court ruled only that the statutes were not facially vague so as to warrant dismissal of the complaints.

3. Roth v. United States, 354 U.S. 476, 77 S. Ct. 1304, 1 L.Ed.2d 1498 (1957) as later elaborated in Memoirs v. Massachusetts, 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1 (1966), applied a three-pronged test: (1) do the materials, taken as a whole, appeal primarily to prurient interests of the average adult (or, if directed to deviants, to the prurient interests of the intended group, Mishkin v. New York, 383 U.S. 502, 86 S.Ct. 958, 16 L. Ed.2d 56 (1966)); (2) are the materials patently offensive because they affront contemporary community standards relating to sexual matters; and (3) are the materials utterly without redeeming social value?

quitted. *See* United States v. Thevis, 484 F.2d 1149 (5th Cir. 1973).

The feature of the *Miller* decision which affords a safeguard not provided by the *Roth-Memoirs* test is the requirement that applicable law specifically define that sexual conduct whose description is proscribed.[4] The federal statute, 18 U.S.C. § 1461, does not contain such specifics. However, authoritative judicial construction may provide the requisite gloss on the statute,[5] and the Court has stated that it is prepared to construe the terms of such federal statutes as "limiting regulated material to patently offensive representations or descriptions of that specific 'hard core' sexual *conduct* given as examples in *Miller* . . . ."[6] We so apply the statute. The combined test for these intermediate cases is, then: (1) do the materials depict or describe sexual conduct specifically defined by the applicable federal law; (2) do the materials, taken as a whole, appeal primarily to prurient interests of the average adult (or, if directed to deviants, to the prurient interests of the intended group, Mishkin v. New York, 383 U.S. 502, 86 S.Ct. 958, 16 L.Ed.2d 56 (1966)); (3) are the materials patently offensive because they affront contemporary community standards relating to sexual matters; (4) are the materials utterly without redeeming social value?[7]

On our first independent review we held that one of the materials

before us, "Anal and Oral Love", had some redeeming value; this must stand. And we retain the ruling that because the jury held "Photographic Deck of Sexual Love" to be non-obscene, consistency requires that the advertisement (which contained a partial presentation of the same photographs) be non-obscene as well. We now consider for the first time whether the advertisement for the magazine "My-O-My" portrays "[p]atently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated" or "[p]atently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals", under 18 U.S.C. § 1461 as we now interpret it. This advertisement on a single sheet has photographs on each side representing the covers of magazines. No sexual congress nor any of the other forbidden acts is portrayed. However, there are two photographs of naked men, standing and kneeling. While they may, in the eyes of the beholder, be contemplating some sexual conduct, the pictures reveal no bodily contact, exotic positions, or sexual arousal. At least where males are depicted, more must be portrayed to constitute a "lewd exhibition" meeting the specificity standard of sexual "conduct".

There remain three books, "A Report on Denmark's Legalized Pornography", "Scandinavian Pornography", "Animals

---

4. 413 U.S. at 24, 93 S.Ct. 2607.

5. *Id.*

6. United States v. 12 200-Ft. Reels of Super 8mm. Film, *supra*, 413 U.S. 123 at 25 n. 7, 93 S.Ct. at 2670. [Emphasis added.]

7. Due process and ex post facto problems do not arise in giving the defendants the benefit of both tests. If pre-*Miller* convictions were obtained under an unconstitutional test, the Supreme Court logically would have been required to reverse the cases before it. Instead it vacated and remanded the pending prosecutions for reconsideration and held two federal statutes not to be facially unconstitutionally vague. *See* n. 2 *supra*. In addition, the Court stated that *Memoirs* was

"correctly regarded at the time of trial as limiting state prosecution under controlling case law." *Miller*, 413 U.S. at 30, 93 S.Ct. at 2618; United States v. Thevis, 484 F.2d at 1152. In light of the Court's approach, the application of the *Miller* specificity requirement when combined with the *Roth-Memoirs* standard serves to provide an added defense. A law is ex post facto only when "in its relation to the offense, or its consequences [it] alters the situation of a party to his disadvantage . . . or takes away or impairs the defense which the law has provided the defendant" at the time of the offense. United States v. Hall, 26 Fed.Cas.No.15,285, 2 Wash. 366 as cited in Kring v. Missouri, 107 U.S. 221, 228–229, 2 S.Ct. 443, 27 L.Ed. 506 (1882).

as Sex Partners", and one advertisement for "Sex Tools for Erotic Pleasure". These we remand for retrial. The jury must apply the *Roth-Memoirs* tests to the material it determines portrays conduct specifically prohibited by the statute. In deciding whether the average person applying community standards would find the material appeals to the prurient interest and is patently offensive, the jury must be directed on the relevant "community" in whose terms the standards of decency are to be judged.

Here we deal with a federal statute proscribing use of the mails to convey obscene materials. In *Miller* the Court held that in a California prosecution determination whether the material appeals to the prurient interest and goes beyond customary limits of candor may constitutionally be limited to "contemporary community standards of the State of California". 413 U.S. at 31, 93 S.Ct. at 2620. The Court, in dealing with federal statutes, made it clear that the elements of obscenity which it spelled out for states also applied to federal statutes, but stopped short of applying to federal statutes its holding as to community standards in evaluating those elements.[8] Its discussion of community standards was entirely confined to cases involving state prosecutions (e. g., Jacobellis v. Ohio, 378 U.S. 184, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964)); the recognition of diversity in tastes among the states which "is not to be strangled by the absolution of imposed uniformity", 413 U.S. at 32, 93 S.Ct. at 2620; and the state-oriented argument that state standards would impermissibly burden interstate commerce, *id.* n. 13. Nevertheless, the Court manifested its wider skepticism as to national standards for

all purposes by referring to the concept as "hypothetical and unascertainable". *Id.* at 31, 93 S.Ct. 2607.

While the path of gracious acceptance of its role by an inferior court might be seen as that of applying the dictum and strongly expressed feeling of the Supreme Court to the federal statute before us, we think the step is not one to be taken without an explicit holding from that Court. In Manual Enterprises v. Day, 370 U.S. 478, 488, 82 S.Ct. 1432, 1437, 8 L.Ed.2d 639 (1962), involving this very statute, Mr. Justice Harlan, who announced the judgment of the Court, wrote, for himself and Mr. Justice Stewart:

> "We think that the proper test under this federal statute, reaching as it does to all parts of the United States whose population reflects many different ethnic and cultural backgrounds, is a national standard of decency. We need not decide whether Congress could constitutionally prescribe a lesser geographical framework for judging this issue * which would not have
>
> "* The 1958 amendments to 18 U.S.C. § 1461, 72 Stat. 962, authorizing criminal prosecution at the place of delivery evince no purpose to make the standard less than national."[9]
>
> the intolerable consequence of denying some sections of the country access to material, there deemed acceptable, which in others might be considered offensive to prevailing community standards of decency."

In this circuit we have ever since applied this statutory construction. Excellent Publications, Inc. v. United States, 309 F.2d 362, 365 (1st Cir. 1962). *See also* United States v. One Reel of Film, 481 F.2d 206 (1st Cir. 1973).

8. In United States v. 12 200-Ft. Reels, *supra*, 413 U.S. at 130 n. 7, 93 S.Ct. at 2670, the Court limited its comments on the applicability of *Miller* to federal statutes by referring to the "specific 'hard-core' sexual conduct given as examples". Its reference, in text, to the "standards [which] are applicable to federal legislation" cited the pages of *Miller* describing the elements of obsceni-

ty, not the pages discussing community standards.

9. Justices Frankfurter and White did not participate. Mr. Justice Black concurred in the result. Mr. Justice Brennan, Chief Justice Warren, and Mr. Justice Douglas concurred on different grounds, not referring to the issue of national standards.

It seems to us that such a construction is not lightly to be discarded. It avoids serious constitutional problems of due process and equal protection. *See, e. g.,* Crowell v. Benson, 285 U.S. 22, 62, 52 S.Ct. 285, 76 L.Ed. 598 (1932). Since the statute [10] proscribes the deposit for mailing, conveying in the mails, and delivery of obscene materials, were a state standard to govern the level of tolerance, guilt or innocence could easily turn on the choice to prosecute in the state of mailing, the state of delivery, or a state through which the material passed.[11] This would open the possibility of senders of identical materials from the same state to be found guilty or not, depending on the course of transit or state of delivery of their materials. The vice of selective prosecution would also be present, as well as the anomalous situation of having prosecution under a national law depend upon the laws of the least permissive states. None of these eventualities would promote the uniform application normally attributed to federal legislation.

An additional support for this statutory construction lies in the policy expressed in *Miller* of respecting state prerogatives. For while the application of a national standard of offensiveness may trench upon the freedom of the most permissive states, the standard inherently is more permissive than that of the most restrictive states. In contrast, the goal of honoring the diversity of tastes in the various states would be more drastically subverted by the application of state standards in that a state could not receive otherwise acceptable materials simply because the state of mailing or of transit happened to be more restrictive. A state, in short, may very well wish to protect itself, but not

wish to be overprotected by those at the restrictive end of the national spectrum.

All this is not to say that evidence of national standards of prurient appeal and patent offensiveness will be unmarred by serious dispute. But neither can we say that such evidence will never be clear; we can readily imagine testimony of the long standing wide acceptance of a book being of vital importance in a prosecution in a rural federal district. And the effort to identify a national standard of tolerance would seem to differ only in degree from the effort, upheld in *Miller,* to identify a state-wide standard in such a large, populous, and variegated state as California. In any event, elusive as the concept of national standards may be, that factor does not in our view justify departing from past precedent and inviting the problems we have sketched above, without a specific license to do so.

While in our earlier opinion, we said that we would require expert testimony on each element of obscenity, and while at least one member of the court strongly believes that experts on national standards may on occasion be of crucial importance, we are unable to say, in light of Paris Adult Theatre I v. Slaton, 413 U.S. 49, 56 n. 6, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973), that experts are required on this issue. Of course we adhere to the position, not affected by *Paris Adult,* that experts are permitted. United States v. One Reel of Film, 481 F.2d 206, 209 n. 3 (1st Cir. 1973).

Finally, because some of the material in the instant case may involve appeal to deviant groups, we leave to the district court the decision whether expert testimony should be required on that issue. *See* Paris Adult Theater I v. Slaton, 413 U.S. 49, 56 n. 6, 93 S.Ct. 2628, 37 L.Ed.

---

10. 18 U.S.C. § 3237 applies to § 1461 prosecutions.

11. Conceivably, constitutional problems could be avoided by confining the determination of liability to the law of the state of delivery. This, however, would involve a rule we deem we cannot properly make. By the same token, Judge Leventhal's interesting suggestion

in "The 1973 Round of Obscenity-Pornography Decisions", 59 ABAJ 1261, 1262 (1973) that "the proper construction of federal laws is to prohibit only those items as obscene that could not be vindicated in *any* substantial community market." would seem too particularistic to fall within the proper scope of our adjudication.

2d 446 (1973), citing United States v. Klaw, 350 F.2d 155, 157–168 (2d Cir. 1965).

We summarize our rulings as follows:

The judgments below are reversed on "Anal and Oral Love", "Photographic Deck of Sexual Love" and the advertisement for "My-O-My".

The judgments on "A Report on Denmark's Legalized Pornography", "Scandinavian Pornography", "Animals as Sex Partners" and the advertisement for "Sex Tools for Erotic Pleasure" are vacated and the counts based on these materials are remanded for retrial subject to the rulings made in this opinion.

ALDRICH, Senior Circuit Judge (dissenting).

I am not happy about the court's opinion. In the first place, the Court majority in *Miller* evinced no compunction about convicting Miller by a definition of obscenity that was not in effect at the time of his publication. Having in mind the mass of uncertainties in this field, see my prior dissent, I can see why the Court felt that the First Amendment did not bar an adverse change in the rules. If not for Miller, why for Palladino? This case does not fit the normal situation where the courts have had to determine whether constitutional principles are to be applied retroactively. With all respect, I do not find the Fifth Circuit's decision in United States v. Thevis persuasive. The Court sent this case back to determine "in light of *Miller*, . . ." * and I would apply the *Miller* definition, not *Roth's* or *Memoirs'*.

By the same token, we are not required by past decisions to give the defendant the benefit of national standards. Today, as a modest observer, I believe that national standards is a many-headed hydra, only ingenuously to be spoken of as within the competence

of any expert short of Hercules, and beyond the mastery of any juror.

It is true that the same might be said to a considerable degree as to the standard of an area of the size and variety of the state of California—indeed it has been suggested that the objection may prevail even in a single county. Hence, we cannot pitch our tent upon a firm bed of logic. Nevertheless, I would prefer partial practicality to what, with all due respect, I can only regard as a delusion. I respectfully dissent. Since my dissent is inoperative, I need not consider further what would be its effect in the case at bar.

---

* The Fifth Circuit's First Amendment ruling was a bare assertion, and got off, I suggest, somewhat on the wrong foot by misquoting the mandate as remanding for further proceedings "not inconsistent with" *Miller*, etc., rather than "in light of."