RAYMOND HEARTLESS, INC., Marilurdes Smoyer, Samuel Steinberg, Defendants-below, Appellants,

v.

STATE of Delaware, Plaintiff-below, Appellee.

Supreme Court of Delaware.

Submitted Oct. 10, 1978.

Decided Jan. 29, 1979.

Revised April 30, 1979.

David R. Hodas of Potter & Carmine, P.A., Wilmington, for defendants-below, appellants.

Timothy H. Barron, Deputy Atty. Gen., Wilmington, for plaintiff-below, appellee.

Before HERRMANN, C. J., and DUFFY and McNEILLY, JJ.

McNEILLY, Justice:

Defendants were convicted by a Superior Court jury of two counts of obscenity, in violation of 11 *Del.C.* § 1361, for knowingly possessing and selling a magazine entitled "Lollitots" which depicts nude or partially nude young girls in various poses which graphically focus upon their genitalia. On appeal, defendants contend that the Trial Court erred in denying their motion for a continuance due to the absence of counsel and, as a result, that defendants were denied their right to counsel guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and by Article I, Section 7 of our Delaware Constitution. Defendants also argue that the magazine "Lollitots" is not obscene as a matter of law; that the Trial Court erroneously admitted into evidence the opinion of an unqualified expert; and, that the improper closing argument of the prosecutor constituted prejudicial error. Finding no merit to any of these contentions, we affirm.

I

Defendants were indicted on two counts of obscenity. Defendants' first trial which began April 12, ended in a mistrial. A new trial was scheduled for May 25, but on May 19 defendants moved for a continuance on the ground of allegedly adverse publicity resulting from their first trial. The motion was denied and trial was rescheduled for June 6. However, on May 27 defendants dismissed counsel who had represented them since their indictment on the pending charges.

Having been unable to secure new counsel by June 2, defendants again moved to continue their case. The Court granted, over the State's objection, defendants' request for a continuance, but specifically instructed defendants that they were to be ready to proceed on the new date regardless whether they had counsel.

The new trial was scheduled for August 3, but as of that date, no attorney had entered his appearance for defendants. It appears that, approximately six weeks before that date, defendants retained a New Jersey attorney who was to associate with local counsel. On the day before trial, the New Jersey attorney told defendant Steinberg to go to the office of local counsel. Defendants went to local counsel's office on the morning of trial and found that he was out of town. Local counsel's associate escorted defendants to court and moved for a continuance upon the grounds that the New Jersey attorney was ill and that local counsel was simply unavailable. The associate also stated that he could not find the file of the case and that he considered the matter to be "quite fouled up." The Trial Judge denied defendants' motion for a continuance and the trial proceeded, resulting in defendants' convictions.

## II

█ It is fundamental that the denial of assistance of counsel to a criminal defendant is a denial of due process under both our Federal and State constitutions. However, "[t]he matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party . . . is compelled to defend without counsel." *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 849, 11 L.Ed.2d 921, 931 (1964). A discretionary ruling on a motion for a continuance will not be disturbed by this Court unless it is based on clearly unreasonable or capricious grounds. *Powell v. State*, Del. Supr., 332 A.2d 776 (1975).

█ Here, defendants' case had been pending nearly six months before its disposition. Defendants had been competently represented by counsel when they chose to dismiss him only ten days before their newly scheduled trial. The Superior Court then granted defendants a continuance to secure new counsel. Consequently, defendants had more than two months to find new counsel and to prepare for trial. Defendants were also given express notice by the Trial Court that their trial would proceed as scheduled regardless of whether they had counsel.

Defendants argue that the Trial Court was clearly unreasonable in denying a continuance because they demonstrated diligence in attempting to secure new counsel and because their counsel's absence was in no way attributable to defendants. Although it appears that defendants retained a New Jersey attorney nearly six weeks prior to the new trial, defendants admit that they never consulted him concerning the case during that period. Nor did defendants consult any local counsel concerning the case. Their first attempt to consult counsel, after their initial retainer of the New Jersey attorney, was on the day of trial, at which time no attorney had ever entered his appearance for defendants. Although defendants' diligence in securing representation is certainly a factor affecting the propriety of the Trial Court's ruling, the mere hiring of counsel and subsequent lack of communication between defendants and their counsel is hardly indicative of defendants' diligence in preparing for trial.

█ In addition, other than the mere claim of counsel's illness, we find nothing in the record, such as an affidavit from counsel's physician, offered in support of defendants' motion for a continuance.

Under these circumstances, the Superior Court did not abuse its discretion in denying defendants' motion for a continuance.

## III

We turn now to defendants' contention that the magazine "Lollitots" is not obscene as a matter of law.

The starting point in our analysis is the landmark case of *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), in which the Supreme Court affirmed the right of each State to prohibit the dissemination or exhibition of materials which depict certain sexual conduct specifically defined by applicable state law, subject to certain First Amendment safeguards. The Court in *Miller* undertook a clarification of those First Amendment limitations within which a state may regulate.

The Court also emphasized the crucial role which the jury plays within this regulatory framework. The jury remains essential "[i]n resolving the inevitably sensitive questions of fact and law." 93 S.Ct. at 2616.

"The mere fact juries may reach different conclusions as to the same material does not mean that constitutional rights are abridged. As this Court observed in *Roth v. United States*, 354 U.S. [476], at 492 n. 30, 77 S.Ct. [1304], at 1313 n. 30 [1 L.Ed.2d 1498], 'it is common experience that different juries may reach different results under any criminal statute. That is one of the consequences we accept under our jury system.'" 93 S.Ct. at 2616, n.9.

With this framework in mind, we now examine the specific First Amendment limitations announced by the Court.

"The basic guidelines for the trier of fact must be:

(a) whether "the average person, applying contemporary community standards" would find that the work, taken as a whole, appeals to the prurient interest,

. . .

(b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and

(c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value."

    \*     \*     \*     \*     \*     \*

"Under the holdings announced today, no one will be subject to prosecution for the sale or exposure of obscene materials unless these materials depict or describe patently offensive 'hard core' sexual conduct specifically defined by the regulating state law, as written or construed. We are satisfied that these specific prerequisites will provide fair notice to a dealer in such materials that his public and commercial activities may bring prosecution." 413 U.S. at 24, 27, 93 S.Ct. at 2615–7.

In accordance with the policy to permit state regulation within constitutional bounds, the Court explained:

"We emphasize that it is not our function to propose regulatory schemes for the States. That must await their concrete legislative efforts. It is possible, however, to give a few plain examples of what a state statute could define for regulation under part (b) of the standard announced in this opinion, *supra* :

(a) Patently offensive representations or descriptions of ultimate sex acts, normal or perverted, actual or simulated.

(b) Patently offensive representation or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals." 413 U.S. at 24–5, 93 S.Ct. at 2615.

■ Incorporating the *Miller* guidelines, our present Delaware Statute, 11 *Del.C.* § 1364, provides:

"Material is obscene if:

(1) The average person applying contemporary community standards would find the material, taken as a whole, appeals to the prurient interests; and

(2) The material depicts or describes:

(a) Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated; or

(b) Patently offensive representations or descriptions of masturbation, excretory functions, and/or lewd exhibitions of the genitals; and

(3) The work taken as a whole lacks serious literary, artistic, political or scientific value."

Defendants argue that 11 *Del.C.* § 1364(2)(b) is constitutionally deficient in that it permits a jury to find that material may be obscene which depicts "lewd exhibition of the genitals" without depicting simultaneously some ultimate sex act, act of masturbation or excretory function. Defendants contend that mere "lewd exhibition of the genitals" is not the type of "hard core" sexual conduct which may constitutionally be proscribed.

Defendants refer to the language of the Court in *Miller* in example (b) of "what a state statute could define for regulation", that is, "[p]atently offensive representation . . . of masturbation, excretory functions, and lewd exhibition of the genitals." 413 U.S. at 25, 93 S.Ct. at 2615. Defendants assert that the conjunction "and" in example (b) should be construed in its usual conjunctive sense, not in the disjunctive sense as incorporated in 11 *Del.C.* § 1364(2)(b). Thus, the use of "and" in its conjunctive sense would imply that only material which depicts simultaneously acts of masturbation, excretory functions, and lewd exhibition of the genitals could be found obscene; whereas, a patently offensive depiction of any one of those types of sexual conduct could not be obscene as a matter of law.

Considering the context of the Court's statement, we think such an interpretation is unwarranted. Clearly, *Miller* requires a "patently offensive" depiction or description of "sexual conduct specifically defined by the applicable state law." Just as clear, we think, is the Court's intent to illustrate, by example, a choice of alternative types of sexual conduct which, if depicted in a patently offensive manner, would be subject to proscription by a state. This interpretation is consistent with the second guideline of *Miller* and prevents the absurd results urged upon this Court by defendants. Thus, we conclude that the incorporation into 11 *Del.C.* § 1364(2)(b) of the term "and/or" in place of the word "and", as used in *Miller,* meets constitutional muster.

Defendants also argue that in order for material to depict "hard core" sexual conduct, it must depict some form of sexual activity such as ultimate sex acts, acts of masturbation or excretory functions. They contend that no photograph of the female anatomy, no matter how posed, can be held obscene if no sexual activity is depicted. *Hunt v. Keriakos,* 1 Cir., 428 F.2d 606 (1970), *cert. denied,* 400 U.S. 929, 91 S.Ct. 185, 27 L.Ed.2d 189 (1970).

We agree with defendants' proposition that nudity alone is insufficient to establish obscenity under the *Miller* standards. *Erznoznik v. Jacksonville,* 422 U.S. 205, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975); *Jenkins v. Georgia,* 418 U.S. 153, 94 S.Ct. 2750, 41 L.Ed.2d 642 (1974). However, nudity is not synonymous with "lewd exhibition of the genitals." Although *Hunt v. Keriakos, supra,* tends to blur any distinctions between nudity and "lewd exhibition of the genitals", the validity of that decision is questionable in light of the subsequent *Miller* guidelines.

Defendants' reliance upon *Jenkins, supra; Huffman v. United States,* 163 U.S.App. D.C. 417, 502 F.2d 419 (1974); *United States v. Palladino,* 1 Cir., 490 F.2d 499 (1974); and *Sovereign News Co. v. Falke,* N.D.Ohio, 448 F.Supp. 306 (1977) is misplaced.

*Jenkins* involved the film "Carnal Knowledge", in which there was some nudity, but ". . . no exhibition whatever of the actors' genitals, lewd or otherwise . . ." 94 S.Ct. at 2755. The opinion does not help answer the question of how much more than mere nudity is enough.

In *Huffman,* the Court specifically declined to decide whether the pictures in issue depicted "lewd exhibition of the genitals", because that issue had not been submitted at trial. 502 F.2d at 423.

*Palladino* involved pictures of naked men who were not engaged in any contact, nor were they in a state of arousal. The Court stated that more need be shown to constitute "lewd exhibition of the genitals", but it did not hold that exhibition of the genitals can never be lewd and thus, obscene. 490 F.2d at 501.

In dicta, the federal District Court in *Sovereign News* stated that for a picture to be obscene, the nude human subject must be engaged in some sexual action. 448 F.Supp. at 397. The analysis appears to be a strained effort to expand the well-settled First Amendment dichotomy of speech and conduct into an area in which it does not apply. The Court's actual holding was that the Ohio statute in question was unconstitutionally vague because it failed to specify the types of sexual conduct which were banned. 448 F.Supp. 406.

■ Implicit in all these opinions is the conclusion that "lewd exhibition of the genitals" is a type of sexual conduct proscribable under *Miller;* none holds otherwise.

In any event, we are not constrained by any of those decisions apart from *Miller,* in view of the right of this State to regulate obscenity within the guidelines established by *Miller.* We conclude that "lewd exhibition of the genitals" constitutes "hard core" sexual conduct which may constitutionally be proscribed.

■ In the case before us, we are presented with photographs of pre-teenage girls, nude or partially nude, in suggestive poses which graphically focus upon their genitals. We concur in Chief Justice Burger's sentiment that "[t]his is an area in which there are few eternal verities." *Miller,* 413 U.S. at 23, 93 S.Ct. at 2614. However, "[o]n the issue of obscenity, the photographs in a very real sense speak for themselves." *United States v. Dost,* 10 Cir., 575 F.2d 1303 (1978), *cert. denied,* —— U.S. ——, 99 S.Ct. 290, 58 L.Ed.2d 263 (1978). The jury may, and in this case did, properly consider the use of children in the photographs in determining whether they were "patently offensive."

■ We think this sexual exploitation of children for commercial gain is deplorable and clearly a "misuse of the great guarantees of free speech and free press . . ." *Breard v. Alexandria,* 341 U.S. 622, 645, 71 S.Ct. 920, 934, 95 L.Ed. 1233 (1951). We find ample evidence to support the jury's verdict that the magazine "Lollitots" is ob-

scene. Accordingly, defendants' contention that the magazine "Lollitots" is not obscene as a matter of law is without merit.

## IV

■ Defendants next contend that the Trial Court erred in admitting certain testimony of the Delaware State Police officer who purchased the magazine "Lollitots" from them. The prosecutor asked the officer, "On January 17th of this year, what was your assignment?" The officer responded:

"My assignment was to go to the Raymond Heartless adult bookstore and purchase what we thought were obscene material, and to take the necessary action there."

Defendants argue that the testimony constitutes opinion evidence of an unqualified expert concerning the ultimate issue for the jury; and, as a result, the testimony erroneously invaded the province of the jury and was clearly prejudicial. We disagree.

The officer merely responded to the State's proper question concerning the officer's assignment. The testimony was neither offered by the State as expert testimony nor did defendants object to it as that. Furthermore, the Trial Court eliminated any possible prejudicial effect of the testimony by properly instructing the jury to apply the appropriate standards for obscenity and to disregard the opinions of others, including witnesses, concerning defendants' guilt or innocence. Thus, defendants' contention is without merit.

## V

■ Finally, defendants contend that the prosecutor's closing argument was clearly improper because the prosecutor expressed his personal belief as to defendants' guilt.

The prosecutor argued in closing:

"The last remark I can make, ladies and gentlemen, is if that magazine is not obscene, that magazine which appeals to the prurient interests of all those people, looking at the sexual organs of all those

little girls, if that's not obscene, then that speaks very ill for our community and our species, and if that's not obscene under our law, we might as well go back to the trees and crawl back in the dust, wherever it was that we came from, because that's where we belong."

The jury in an obscenity case must both determine and apply the contemporary community standards, and we think that the prosecutor's remarks were proper comment upon the jury's exercise of both those duties. Thus, we find no merit to defendants' last contention.

\*　　\*　　\*

AFFIRMED.