**Herman HICKS, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

Supreme Court of Delaware.

Submitted Oct. 21, 1980.

Decided Aug. 12, 1981.

John E. Sullivan (argued) and Mary M. McDonough, Asst. Public Defenders, Wilmington, for defendant below, appellant.

Timothy H. Barron (argued), Deputy Atty. Gen., Wilmington, for plaintiff below, appellee.

Before HERRMANN, C. J., DUFFY, McNEILLY, QUILLEN and HORSEY, JJ., constituting the Court en Banc.

HERRMANN, Chief Justice (for the majority):

The defendant appeals his convictions and sentences for Attempted Murder, Robbery, and Conspiracy, all in the First Degree, and Possession of a Deadly Weapon During the Commission of a Felony—on the grounds that the Superior Court committed reversible error under the facts of this case (1) in trying him in the absence of either himself or an attorney representing him; (2) in rendering its verdicts by letter-opinion sent to the defendant at the Correctional Center, and (3) in sentencing him on both the deadly weapon and underlying felony convictions.

I.

The defendant, Herman Hicks, was arrested on charges relating to an armed-robbery attempt at a liquor store. The indictment charged him with two counts of Attempted Murder in the First Degree, 11 Del.C. §§ 531, 636; Robbery in the First Degree, 11 Del.C. § 832; Conspiracy in the First Degree, 11 Del.C. § 513; and three counts of Possession of a Deadly Weapon During the Commission of a Felony, 11 Del.C. § 1447. Unable to make bail, the defendant was committed to the custody of

the State. Two other men were arrested and indicted on similar charges arising out of the same incident.

The defendant was represented by privately retained counsel; each of the co-defendants was represented by separate counsel. The three were tried jointly by the Court without a jury.[1] At the end of the first day of trial, defense counsel jointly requested a continuance so that the defense might conduct an independent ballistics test of a handgun introduced into evidence by the State. The Trial Court granted the continuance.

Eleven weeks later, the second day of trial began. Immediately, the defendant expressed to the Trial Court his dissatisfaction with his attorney and moved for a continuance in order to retain another lawyer whom he named. The Trial Court denied the motion: the stated reasons for the defendant's discontent with his attorney were, at best, weak; and the Court was obviously disinclined to grant another continuance in an already much-delayed proceeding. The Court then offered the defendant a choice: to keep his attorney at the trial or proceed *pro se*. The defendant rejected both alternatives; thereupon the Court relieved the attorney of his representation, and the attorney left the courtroom soon thereafter. The defendant then asked to be taken "back downstairs [to the holding cell]. I have the right to an attorney." The Court instructed the defendant that "you have the right to waive your presence, if you want to, if you want to leave. . . . Or you can stay here and participate in the trial." At this point, the defendant seated himself, and trial proceeded. The defendant's sole effort at conducting his own defense was a single question on cross-examination, which was disallowed by the Court because it amounted to testifying. After that, the defendant declined to ask any questions of the presented witnesses.

The following morning, at the start of the third and final day of trial, the defendant moved for a mistrial, stating as his grounds that he was ill-equipped to defend himself and that the Court should have permitted him to retain new counsel. The Court denied the motion, and the following colloquy ensued:

"DEFENDANT: I would like to go back downstairs, Your Honor.

"THE COURT: Your motion for mistrial is denied. If you want to leave the courtroom and waive your right to be present—

"DEFENDANT: I'm not waiving no rights to be present, man. I want an attorney here.

"THE COURT: You fired your attorney.

"DEFENDANT: So what? You can't deny my right to have an attorney.

"THE COURT: You're going to have to sit down and be quiet or leave the courtroom and waive your right to be present, one or the other.

"DEFENDANT: I'm not waiving any rights.

"THE COURT: Well then sit down and be quiet.

"DEFENDANT: Take me downstairs.

"THE COURT: You are voluntarily leaving the courtroom in the middle of the trial.

"DEFENDANT: That's right, because you won't let me have no attorney.

"THE COURT: The record will so show."

At that point, the defendant left the courtroom with an officer of the law and remained in the custody of the correctional authorities. The trial continued in the absence of the defendant. The State presented its last two witnesses, counsel for the two co-defendants were given an opportunity to cross-examine, and then the State rested. On defense, one of the co-defendants testified for himself; otherwise, no evidence was presented by the defense. The trial then concluded.

The Trial Court found the defendant guilty of all charges and, five weeks after the trial, informed him of its verdicts via

---

1. All three waived the right to jury trial. Superior Court Criminal Rule 23.

letter-opinion sent to the Delaware Correctional Center, where the defendant was being held in custody. The Court subsequently sentenced the defendant to two consecutive life terms for the charges of Attempted Murder; three years for Robbery; one year for Conspiracy; five years for Possession of a Deadly Weapon during the robbery; and ten years for Possession of a Deadly Weapon during the attempted murders.

In this appeal, the defendant attacks both the convictions and the sentences imposed. He is entitled to a new trial, he contends, on the grounds stated above. The defendant further contends that he may not be sentenced for both Possession of a Deadly Weapon During the Commission of a Felony and the underlying felony.

## II.

■ We hold that the defendant must be granted a new trial because, in the full context of this serious case, it was an abuse of discretion and prejudicial error for the Trial Court not to appoint counsel for the defendant on a standby basis.

The right of a defendant to representation by legal counsel in a criminal proceeding is so basic to our system of justice as to be beyond question. "[L]awyers in criminal courts are necessities, not luxuries." *Gideon v. Wainwright*, 372 U.S. 335, 344, 83 S.Ct. 792, 796, 9 L.Ed.2d 799, 805 (1963). "The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel." *Powell v. Alabama*, 287 U.S. 45, 68–69, 53 S.Ct. 55, 64, 77 L.Ed. 158, 170 (1932).

When a defendant, for one reason or another, refuses the assistance of counsel, trial courts are faced with a difficult question: should the Court require "standby" counsel, even against the wishes of the defendant, in order to protect the defendant's basic rights?

■ There is no right to standby counsel. Nevertheless, the appointment of standby counsel may benefit not only the defendant but also the Court, by insuring an orderly and fair administration of justice. Chief

Justice Burger in his concurring opinion in *Mayberry v. Pennsylvania*, 400 U.S. 455, 467–68, 91 S.Ct. 499, 506, 27 L.Ed.2d 532, 541–42 (1971), pointed out the value of the standby counsel arrangement:

"When a defendant refuses counsel, as he did here, or seeks to discharge him, a trial judge is well advised—as so many do—to have such 'standby counsel' to perform all the services a trained advocate would perform ordinarily by examination and cross-examination of witnesses, objecting to evidence and making closing argument. No circumstance that comes to mind allows an accused to interfere with the absolute right of a trial judge to have such 'standby counsel' to protect the rights of accused persons 'foolishly trying to defend themselves,' as Mr. Justice DOUGLAS so aptly described it. In every trial there is more at stake than just the interests of the accused; the integrity of the process warrants a trial judge's exercising his discretion to have counsel participate in the defense even when rejected. A criminal trial is not a private matter; the public interest is so great that the presence and participation of counsel, even when opposed by the accused, is warranted in order to vindicate the process itself."

A standby counsel arrangement is particularly effective in cases where the defendant, attempting to represent himself, may become obstreperous and be ordered removed from the courtroom:

"The value of the precaution of having independent counsel, even if unwanted, is underscored by situations where the accused is removed from the courtroom under *Illinois v. Allen* [397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970)]. The presence of counsel familiar with the case would at the very least blunt Sixth Amendment claims, assuming they would have merit, when the accused has refused legal assistance and then brought about his own removal from the proceedings." 400 U.S. at 468, 91 S.Ct. at 506, 27 L.Ed.2d at 542 (Burger, C. J., concurring). See also *Faretta v. California*, 422 U.S. 806, 836 n.

46, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562, 581 (1975); *Commonwealth v. Africa*, Pa.Supr., 353 A.2d 855, 864 (1976).

It has been suggested that, when a defendant acts *pro se*, "[s]tandby counsel should always be appointed in cases expected to be long or complicated or *in which there are multiple defendants.*" *The ABA Project on Standards for Criminal Justice: Standards Relating to the Function of the Trial Judge*, § 6.7 with Commentary, Approved Draft (1972) (Emphasis Added). Delaware courts have in the past followed the practice of appointing standby counsel for a defendant who elects to proceed *pro se*. See Comment, *Comparative Study of the American Bar Association Standards for Criminal Justice with Present Delaware Law*, § 6.7, p. 364 (1976); see, e. g., *Bey v. State*, Del.Supr., 402 A.2d 362, 365 (1979).

Consideration of the standby counsel question is appropriate here because, although the defendant did not express a desire to act *pro se*,[2] he did refuse the assistance of his retained counsel and thereafter attempted to represent himself during the second day of trial when the Court refused the continuance.

▆▆▆ We do not hold that the failure of the Trial Court to grant a continuance, so that the defendant might retain another attorney, amounted to an abuse of discretion. The two co-defendants were present in court with counsel ready to proceed with trial; and the Court had previously granted an eleven-week continuance, at the request of the defense, during which time, it appears, the defendant made no complaint to the Court about his retained attorney. Unless it is based on clearly unreasonable or capricious grounds, a discretionary ruling on a motion for a continuance will not be disturbed by this Court. *Raymond Heartless, Inc. v. State*, Del.Supr., 401 A.2d 921, 923 (1979).

We do hold, however, that the failure of the Trial Court to appoint the defendant's retained counsel or another attorney to be actively available during the trial on a standby basis constituted reversible error under all of the facts and circumstances of this case. The defendant possessed but a ninth grade education, and was in no position to adequately protect his own vital interests in a trial involving multiple defendants—a situation typically demanding standby counsel. When the Trial Court permitted the defendant and his attorney to leave the courtroom, the defendant's cause was left entirely unrepresented. This created a vacuum in a very serious criminal case—a vacuum which the active presence of standby counsel could have filled.

We conclude, therefore, that the Trial Court committed prejudicial error by not keeping retained counsel or another attorney in this case as standby counsel, any wish of the defendant to the contrary notwithstanding.

In so holding, we are not unmindful of the difficulties encountered by a Trial Judge faced with a defendant who refuses the assistance of counsel, or who, through ignorance of the law, persistently questions the Court's authority, or who simply walks out of the courtroom—all of which occurred in this case. We are sympathetic with the frustration faced by the Trial Judge in this case, especially in view of the presence in Court of multiple defendants and the eleven-week delay between the first and second day of trial. Nevertheless, in keeping with the guarantee of fair trial, the ultimate goal of the administration of criminal justice, and with vision sharpened by a retrospective view of the sentences, we cannot allow the convictions to stand on these very serious charges without the availability of counsel to speak for the defendant and to assist the Court at trial, when the defendant did not unambiguously waive his right to counsel.

**2.** The defendant in the instant case clearly did not waive his right to counsel. On at least two occasions he declared his refusal to waive his rights. Courts generally indulge every reasonable presumption against waiver of fundamen-

tal rights, and require an intelligent and competent waiver. *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 1466 (1938).

## III.

In view of the foregoing conclusion, we do not reach the issue of the propriety of the rendition of the verdicts by mail, sent to the defendant in custody and unrepresented, and the contention of the defendant that his case is distinguishable on its facts from *Bailey v. State*, Del.Supr., 419 A.2d 925 (1980). Compare *Hooks v. State*, Del. Supr., 429 A.2d 1312 (1981).

## IV.

Also in view of the foregoing conclusion, we do not reach the defendant's attack upon his sentencing for both Possession of a Deadly Weapon during the Commission of a Felony and the underlying felonies. Attention is directed, however, to *Davis v. State*, Del.Supr., 400 A.2d 292 (1979) and this Court's most recent decision in *Hunter v. State*, Del.Supr., 430 A.2d 476 (1981).

\* \* \*

Reversed and remanded for new trial.

DUFFY, Justice, dissenting:

I regret that I cannot agree with the Court's decision reversing the judgment of the Superior Court. In his opinion the Chief Justice has noted the difficult issues which the appeal presents, but my conclusion as to those issues is basically different from that of the majority.

As I understand the majority's view, the Trial Judge was in error because he abused his discretion on the counsel issue. Specifically, the Court finds prejudicial error in the failure to keep retained counsel or to appoint a different attorney as "standby counsel" for defendant.

I have difficulty agreeing with that conclusion for several reasons: First, standby counsel is sometimes appointed to aid a self-represented accused if and when he requests help. *Faretta v. California*, 422 U.S. 806, 835, 95 S.Ct. 2525, 2541 n. 46, 45

L.Ed.2d 562 (1975). No such request was made by Mr. Hicks. Indeed, Mr. Hicks made it clear that he did not want Mr. Kennedy (the attorney whom he had retained) as his counsel and he said that to the Trial Judge on at least three occasions.[1] In view of defendant's repeated and emphatic rejection of Mr. Kennedy as his counsel, it is difficult to understand how the Trial Judge can be faulted for failing to keep Mr. Kennedy in the case on a standby basis. Indeed, if the Trial Judge had done so, that would have created a basis for attacking a conviction, i. e., ignoring defendant's repeated and specific objections and compelling him to accept Mr. Kennedy as his attorney.

It seems to me that, under the Court's thesis, the only reasonable option available to the Trial Judge was to appoint another attorney and, necessarily, that attorney would have been a stranger to the case. While the Court's opinion limits the participation of such an appointed attorney to a "standby" status, it does not define that term nor suggest what responsibility such an attorney would have had. But "standing by" a defendant conducting his own case is one thing; acting as effective counsel for a defendant who is "downstairs" is an entirely different role.

As to waiver, I agree that defendant did not waive his right to counsel in so many words. But actions speak louder than words and, as I read the transcript, Mr. Hicks knew precisely what he was doing: during the trial he discharged the attorney whom he had retained, he wanted another attorney of his own choice and, after he was denied a continuance so that he could attempt to have that attorney represent him, he elected to proceed without an attorney; thereafter he renewed the attempt to get a different attorney and when that failed he

---

1. The record shows that, as to Mr. Kennedy, Mr. Hicks said to the Trial Judge:

   "I do not want him to stay on my case."

   \* \* \* \* \* \*

   "I don't want this man to represent me no more."

   \* \* \* \* \* \*

   "... I don't want this man on my case no more."

chose to leave the courtroom;[2] in a prior colloquy the Trial Judge had told him,

"Well, we're going to have this trial. . . . [y]ou have the right to waive your presence, if you want to, if you want to leave. We're going to try your case. If you want to leave the courtroom and waive your right to be present, you can do that. It's entirely up to you. Or you can stay here and participate in the trial."

I agree that the case presents hard issues for an appellate court, as it did for the Trial Judge. But those issues were entirely of defendant's own doing. He provoked the counsel issue in the courtroom and then walked out of it. Although the Court agrees that the Trial Judge properly denied Mr. Hicks' request for a continuance (so that he could seek new counsel), the irony is that when he took a walk, he laid the foundation not merely for a continuance but for an entire new trial.

Respectfully, I dissent from the Court's ruling.

---

**2.** We are not here concerned with a Criminal Rule 43 situation in which a defendant's presence is required at arraignment, at the opening of trial and at sentencing.