# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

JUANITA HARRIS,                          )
                                         )
    Claimant-Appellant,              )
                                         )
v.                                       )        C.A. No. N20A-11-004 JRJ
                                         )
CITIGROUP GLOBAL MARK,                   )
                                         )
    Employer-Appellee.               )

## MEMORANDUM OPINION

Submitted: July 22, 2021
Decided: October 28, 2021

*Upon Juanita Harris's Appeal from the Decision of the Industrial Accident Board:*
**AFFIRMED.**

Donald E. Marston, Esquire, Doroshow, Pasquale, Krawitz & Bhaya, 4051 Ogletown Stanton Road, Suite 201, Newark, Delaware 19713, Attorney for Claimant-Below/Appellant.

H. Garrett Baker, Esquire, Elzufon, Austin & Mondell, 300 Delaware Avenue, Suite 1700, Wilmington, De 19801, Attorney for Employer-Below/Appellee.

**Jurden, P.J.**

## I. INTRODUCTION

This is an appeal from the Industrial Accident Board ("Board"). Claimant-Appellant Juanita Harris ("Claimant") appeals two of the Board's orders: the October 15, 2020 order denying her motion for a continuance of her Board Hearing ("Continuance Decision")[1] and the October 28, 2020 order denying her Petition to Determine Compensation Due ("Petition Decision").[2] For the reasons explained below, the Court **AFFIRMS** both Board Decisions.

## II. PROCEDURAL HISTORY

On June 25, 2020, Claimant filed her Petition to Determine Compensation Due ("Petition") with the Board, alleging she developed bilateral carpal tunnel syndrome as a result of her job duties as an administrative agent for the Employer-Below/Appellee Citigroup Global Mark ("Employer").[3] A Hearing on the Petition was scheduled for October 22, 2020. On July 28, 2020, Claimant noticed the deposition of her treating physician, Dr. J. Douglas Patterson for October 16, 2020. Three days before the scheduled deposition and nine days before the Hearing,

---

[1] *Harris v. Citigroup Global Mark*, No. 1493470, at 1 (Del. I.A.B. Oct. 15, 2020) (ORDER) Trans. ID. 66541474). Because Claimant has attached the Board's Continuance Decision to her Opening Brief as Appendix A, the Court cites it using "A" citations.

[2] Industrial Accident Board Decision on Petition for Determination of Compensation Due, Hearing No. 1493470 ("Board Decision") (Trans. ID. 66541474). Because Claimant has attached the Board's Decision to her Opening Brief as Appendix B, the Court cites it using "B" citations.

[3] Claimant-Appellant's Opening Brief on Appeal of the Industrial Accident Board's Decision Dated October 28, 2020 ("Opening Brief") (Trans. ID. 66541474), at 1; Employer-Appellee's Answering Brief on Appeal of the Industrial Accident Board's Decision Date October 28, 2020 ("Answering Brief") (Trans. ID. 66541474), at 1.

2

Claimant canceled the deposition. Claimant did so because Dr. Patterson's testimony "would not be helpful in establishing causation related to the workplace."[4] Claimant then requested a continuance of the Hearing to allow her an opportunity to find a medical expert who might support her claim.[5] The Board denied Claimant's continuance request, stating:

> Claimant selected her own treating doctor to testify on her behalf. In late July she arranged for him to be deposed on October 16. The problem is that his medical opinion is not helpful to her case and so she cancelled the deposition. Obviously, choosing her treating doctor to testify and then choosing to cancel that deposition were all within Claimant's control. The mere fact that Claimant's own treating doctor cannot testify to a reasonable medical probability that Claimant's carpal tunnel syndrome was related to her work activities is not, by itself, a basis to prolong this litigation.[6]

The Hearing went forward as scheduled and the Board denied Claimant's Petition because she failed "to demonstrate that her injuries were work related and therefore compensable."[7] On appeal, Claimant argues that the Board abused its discretion and erred as a matter of law when it denied her request for a continuance, and as a result, she was compelled to proceed to the Hearing without the benefit of medical testimony.

---

[4] Industrial Accident Board Hearing No. 1493470, Dated October 22, 2020, at 1. Because Claimant has attached Claimant's deposition transcript to her Opening Brief as Appendix C, the Court cites it using "C" citations.
[5] C1.
[6] A1.
[7] B8.

3

## III.  STATEMENT OF FACTS

### A.  Overview

Claimant has been an employee of Citigroup Global Mark since 2009.[8]  At the time of her alleged injuries, she was working as an administrative agent performing data entry and e-mail communications.[9]  In the months leading up to May 2018, her work duties increased significantly due to a series of turnovers and staffing shortages.[10]  She had to take on the responsibilities of the senior agent and train new employees.  This required her to do more typing and data entry.[11]

On May 19, 2018, Claimant went to the emergency room because she was experiencing numbness in her left hand.[12]  On May 28, 2018, Claimant visited her primary care doctor at Family Medical Associates of Delaware complaining of pain and numbness in her left hand.[13]  Claimant's primary care doctor diagnosed carpal tunnel syndrome.  When Claimant returned to her primary care doctor on October 9, 2018 complaining of left wrist and hand problems, the doctor referred her to Dr. Patterson, an orthopedic surgeon.[14]  Claimant's first office visit with Dr. Patterson

---

[8] C11.
[9] B4; C11.
[10] B4; C12.
[11] B4; C12.
[12] B4; C12-13.
[13] C13. According to the record of this visit, the pain was constant but improving.
[14] C14.

4

was on October 11, 2018.[15]  Between October 11, 2018 and November 25, 2019, Claimant saw Dr. Patterson for numerous consultations and procedures.[16]

## B.    The Board's Denial of the Continuance Request

Following the cancellation of Dr. Patterson's October 13 deposition, Claimant requested a continuance in order to search for a medical expert who could support her causation claim.  Employer opposed the request on the basis that Dr. Patterson was Claimant's personal doctor, and his expert opinion was not supportive of her causation theory that her carpal tunnel was related to her work duties.[17]

On October 15, 2020, the Board issued the Continuance Decision.  In determining Claimant's request for a continuance, the Board analyzed whether there was "good cause" for the continuance pursuant to 19 *Del. C.* §2348(h).[18]  After

---

[15] *Id.*

[16] B5; C15-17 ("Claimant testified that Dr. Patterson completed a CTS (Carpal Tunnel Syndrome) release in her left hand in November 2018.  In March 2019, she underwent a second left hand surgery for a trigger right thumb release and removal of a ganglion cyst. Some eight months later Claimant submitted to a right upper extremity CTS release, wrist injection, and bilateral elbow releases.  Claimant loosely testified that a 2018 EMG showed pain increased by gripping and typing as did a second EMG performed on January 22, 2019.").

[17] A1-2.

[18] 19 *Del. C.* 2348(h) ("Requests for continuance may be granted only upon good cause shown by the party requesting the continuance. Good cause shall be set forth in the Rules of Procedure of the Industrial Accident Board. A request for continuance may be granted or denied by the Department. If a party objects to the Department's decision or another party's motion, it may, by motion, seek Board review and the Board shall determine the matter."). The bases for "good cause" are set forth in the Rules of the Industrial Accident Board ("Board Rules") Rule 12(B)(1): ("For purposes of determining whether a requesting party had made the required showing of 'good cause' or 'extraordinary circumstances,' under 19 Del. C. § 2348, the Board shall use the following definitions of those terms: (1) 'Good Cause' shall include: (a) the unavailability of a previously scheduled medical or other material witness;

5

reviewing the Rule 12(B)(1) bases, the Board denied the continuance pursuant to Board Rule 12(B)(1)(h).[19]

## C. Claimant's Testimony at the Board Hearing

At the beginning of the Hearing on October 22, 2020, Claimant renewed her motion for a continuance.[20] After deliberation, the Board again denied the motion, noting that Claimant offered no new evidence or changed circumstances, but rather, sought to reargue the Board's previous denial.[21] The Hearing proceeded with Claimant as the sole witness. During her testimony, Claimant "indicated her strong belief" that the injuries she sustained to her upper extremities (and for which Dr. Patterson provided treatment) were caused by her work as an administrative agent.[22] Claimant described her course of treatment with Dr. Patterson, including but not

---

(b) the unavailability of an attorney for a party due to a conflicting court appearance; (c) the illness of a party, a party's attorney or a material witness (including, if appropriate, illness which affects the ability of necessary persons to participate in the deposition of a medical or other material witness); (d) justifiable absence from the State of a party, a party's attorney or a material witness; (e) a justifiable substitution of counsel for one party (this shall not include a transfer of files within a law firm); (f) the unavailability of a medical witness whose deposition cannot be scheduled despite due and prompt diligence on the part of the requesting party; (g) inadequate notice from the Department and/or the Board which would justifiably prevent a party from having a full and fair opportunity to be heard; and (h) any other unforeseen circumstances beyond the control of the party seeking the continuance which would prevent the party from having a full and fair hearing.").

[19] A3 (Discussing the merits of Claimant's "good cause" argument under Rule 12(B)(1)(h): "Obviously, choosing her treating doctor to testify and then choosing to cancel that deposition were all within Claimant's control. The mere fact that Claimant's own treating doctor cannot testify to a reasonable medical probability that Claimant's carpal tunnel syndrome was related to her work activities is not, by itself, a basis to prolong this litigation.").

[20] C4.

[21] C7-8.

[22] B4-5; C18.

limited to: (i) a November 2018 carpal tunnel syndrome release in her left hand; (ii) a March 2019 left hand surgery for a trigger thumb release and removal of a ganglion cyst; and (iii) a November 2019 right upper extremity carpal tunnel syndrome release.[23] Claimant admitted that Dr. Patterson was the only orthopedic surgeon she had seen regarding her condition.[24] Claimant testified that upon meeting Employer's medical expert, Dr. Eric Schwartz, she reaffirmed her belief that "long hours, constant turnover of employees… and working repetitively typing" were the cause of her alleged injuries.[25] When asked by the Board why Claimant took so long to file her claim, Claimant responded that she believed her case was filed and being handled by her previous attorney during the time she was first receiving treatment.[26] She was "surprised" when she discovered her prior attorney never filed a petition on her behalf and was not working on the case.[27]

## D. Board's Findings of Fact and Conclusions of Law

On October 28, 2020, the Board issued its Petition Decision, finding that Claimant failed to establish a viable causation theory between her injuries and her duties as an employee.[28] The Board highlighted Claimant's failure to offer any

---

[23] C15-17.
[24] C20.
[25] B5; C18.
[26] C19.
[27] C19, 23-25.
[28] B8.

7

expert medical testimony, and noted that Dr. Patterson, "the only surgeon she has seen relevant to the injuries in question, was unwilling himself to testify in such a way as to support her causation theory."[29] The Board stated:

> *The nature of Claimant's injury is not visible to the Board.* While she testified that she believes the numbness and pain experienced in both upper extremities starting in May 2018 is related to repetitive data entry and use of employer's e-mail system, she offered no medical testimony to support this theory and, in fact, admitted that her own treating physician, the only surgeon she has seen relevant to the injuries in question, was unwilling himself to testify in such a way as to support her causation theory. Claimant testified about two left, upper extremity surgeries allegedly performed to address CTS and trigger finger, removal of a ganglion cyst and then multiple "releases" of the right upper extremity (wrist and elbow) as well. These injuries or conditions are not so obvious to the Board, particularly in the context of causation, that medical testimony is unnecessary to help establish how and why these conditions arose, and even more specifically that Claimant's work caused them.[30]

The Board explained that while it may consider evidence outside of medical testimony when determining causation, it did not consider the nature of Claimant's carpal tunnel syndrome injuries to be so obvious as to establish their existence and severity without expert medical opinion.[31] Considering the absence of medical testimony and Claimant's failure to explain how her work duties caused her alleged

---

[29] B7.

[30] *Id.* (Emphasis added).

[31] B8 ("While the Board agrees with Claimant's argument that a medical expert is not necessary in every case, the Board finds it difficult to accept that a condition like Carpal Tunnel Syndrome and/or related injuries the likes of which Claimant has alleged as being compensable don't require a causation opinion from an expert and certainly from someone other than Claimant who, at a minimum, has a very self-serving basis to offer her opinion(s).").

8

injuries, the Board concluded that Claimant failed to meet her burden of establishing causation:

> In the instant case, it was Claimant's burden to demonstrate that her injuries were work related and therefor compensable, before the Board could ever get to the reasonableness and necessity of the surgeries subsequently performed and other treatment rendered by Dr. Patterson.[32]

## IV. STANDARD OF REVIEW

"The review of an Industrial Accident Board's decision is limited to an examination of the record for errors of law and a determination of whether substantial evidence exists to support the Board's findings of fact and conclusions of law."[33] "Substantial evidence" is less than a preponderance of the evidence but more than a "mere scintilla."[34] Specifically, substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[35] The Court may not "weigh the evidence, determine questions of credibility, or make its own factual findings."[36] "The Superior Court . . . must view the record in the light

---

[32] B8.

[33] *Powell v. OTAC, Inc.*, 223 A.3d 864, 870 (Del. 2019) (internal quotations omitted) (quoting *Roos Foods v. Guardado*, 152 A.3d 114, 118 (Del. 2016)).

[34] *State v. Dalton*, 878 A.2d 451, 454 (Del. 2005) (citation omitted).

[35] *Washington v. Del. Transit Corp.*, 226 A.3d 202, 210 (Del. 2020) (internal quotation marks omitted) (quoting *Powell v. OTAC, Inc.*, 2019 WL 6521980, at *4 (Del. Dec. 4, 2019)).

[36] *Powell v. OTAC, Inc.*, 223 A.3d 864, 870 (Del. 2019) (internal quotation marks omitted) (quoting *Person-Gaines v. Pepco Holdings, Inc.*, 981 A.2d 1159, 1161 (Del. 2009)).

most favorable to the prevailing party below."[37] On appeal, the Superior Court reviews legal issues *de novo*.[38]

The Board has abused its discretion only if its decision "exceeds the bounds of reason given the circumstances" or the "rule of law or practice have been ignored so as to produce injustice."[39] "[A] discretionary ruling by a trial court or administrative body on a motion for a continuance will not be set aside unless that decision is unreasonable or capricious."[40]

## V.    DISCUSSION

### A. The Board's Denial of Claimant's Request For a Continuance Did Not Constitute An Abuse of Discretion and Was Not Unreasonable or Capricious

The Board's refusal to grant a continuance is a discretionary ruling. As such, it will not be set aside unless it is unreasonable or capricious.[41] Pursuant to 19 *Del. C.* §2348(h), a continuance may be granted:

> [O]nly upon good cause shown by the party requesting the continuance. Good cause shall be set forth in the Rules of Procedure of the Industrial Accident Board.  A request for continuance may be granted or denied by the Department.  If a party objects to the Department's decision or

---

[37] *Wyatt v. Rescare Home Care*, 81 A.3d 1253 (Del. 2013) (citation omitted).

[38] *Person-Gaines v. Pepco Holdings, Inc.*, 981 A.2d 1159, 1161 (Del. 2009).

[39] *Warren v. Amstead Indus.*, 2020 WL 4582504, at *3 (Del. Super. Ct. Feb. 6, 2020) (quoting *Peregoy v. Del. Hospice*, 2011 WL 3812246, at *1 (Del. Super. Ct. Aug. 12, 2011)).

[40] *In Re Kennedy*, 472 A.2d 1317, 1331 (Del. 1984) (citing *Raymond Heartless, Inc. v. State*, 401 A.2d 921 (Del. 1979); *Blackledge v. Com. Pennsylvania State Police*, 62 Pa. Cmwlth. 188, 435 A.2d 309 (1981)).

[41] *In Re Kennedy*, 472 A.2d 1317, 1331 (Del. 1984).

10

another party's motion, it may, by motion, seek Board review and the Board shall determine the matter.[42]

The Board may grant a continuance to a date more than 180 days after the filing of the petition only if the party requesting the continuance can demonstrate "good cause" and "extraordinary circumstances."[43] Board Rule 12 sets forth the bases for "good cause".[44]

According to Claimant, the Board abused its discretion by finding that Claimant failed to establish good cause under 19 *Del. C.* § 2348(h) and Board Rule 12.[45] Claimant contends that "miscommunication" with her previous counsel left her unaware of the status of her Worker's Compensation claim, specifically the fact that the statute of limitations was about to run.[46] Claimant then argues that this fact, in addition to the "sudden revelation" that Dr. Patterson, her sole medical expert, was unwilling to provide favorable testimony as to Claimant's causation theory, constitutes good cause for a continuance under Board Rule 12(B)(1)(h).[47]

Based on the record before it, the Board did not abuse its discretion by denying Claimant's request for a continuance. The Board complied with 19 *Del. C.* § 2348(h)

---

[42] 19 *Del. C.* 2348(h).
[43] 19 *Del. C.* § 2348(h)(2).
[44] Industrial Accident Board Rule 12(B)(1) n.18.
[45] Opening Brief, at 6-7.
[46] Opening Brief, at 3, 7.
[47] Opening Brief, at 7-8.

11

and Board Rule 12(B)(1).[48] It considered each of the eight bases[49] and narrowed the potential applicable good cause bases down to Rule 12(B)(1)(h): "any other unforeseen circumstances beyond the control of the party seeking the continuance which would prevent the party from having a full and fair hearing."[50] The Board's finding that Claimant's decision to cancel the deposition of her sole medical expert days before her scheduled Hearing did not qualify as an unforeseen circumstance beyond her control or exceed the bounds of reason, and it is clear from the record that the Board did not ignore a rule of law or practice "so as to produce injustice.[51]" It was Claimant, not the Board, who cancelled Dr. Patterson's deposition nine days before the Hearing, admitting that the purpose of the request was to seek out favorable medical testimony.

Claimant conclusively states that the Board's denial of her continuance was unreasonable.[52] Without supporting evidence, Claimant presumes that her lack of knowledge regarding her chosen medical expert's unfavorable testimony is sufficient grounds to be considered an unforeseen circumstance outside of her

---

[48] A2-3.

[49] A2 ("Many of the listed bases are clearly inapplicable. The continuance request is not because of the unavailability of an attorney because of conflicting court appearances (Rule 12(B)(1)(b)); or the illness of a party/attorney/witness (Rule 12(B)(1)(c)); or a justifiable absence from the State of a party/attorney/witness (Rule 12(B)(1)(d)); or a justifiable substitution of counsel (Rule 12(B)(1)(e)); or a inadequate notice from the Department or Board which would justifiably prevent a party from having a full and fair hearing (Rule 12(B)(1)(g)).").

[50] Industrial Accident Board Rule 12(B)(1)(h).

[51] *Warren v. Amstead Indus.*, 2020 WL 4582504, at *3 (Del. 2020).

[52] Opening Brief, at 10.

control under Board Rule 12. Claimant's argument that the testimony of her own medical expert was a "sudden revelation" beyond her control was correctly rejected by the Board. It was Claimant's decision to notice Dr. Patterson's deposition without knowing his opinion on causation. That was within her control. It was within Claimant's control to ascertain his opinion before noticing his deposition. And it was her decision to cancel his deposition shortly before the Hearing. The Board did not abuse its discretion in finding that Claimant's inaction and belated attempt to find new medical expert when her own treating physician would not offer a favorable causation opinion did not constitute "good cause" under 19 *Del. C.* § 2348(h) and Board Rule 12.[53]

## B. The Board's Denial of Claimant's Request For a Continuance Was Not An Error of Law

In addition to claiming the Board abused its discretion, Claimant conclusively argues that the Board erred as a matter of law by denying her requests for a continuance.[54] Claimant accuses the Board of proceeding with a hearing "where Ms. Harris was not allowed to produce a medical expert and guarantee that she would have to appeal the ultimate decision."[55] According to Claimant, the Board approving

---

[53] 19 *Del. C.* 2348(h).
[54] Opening Brief, at 2, 8.
[55] Opening Brief, at 9.

13

her continuance request so she could find another medical expert would be "the only way to ensure she has the opportunity to have a full and fair hearing."[56]

Claimant's argument that she was compelled to proceed with the hearing without the benefit of medical testimony ignores Claimant's role leading up to the Hearing. As the Board noted in its Continuance Decision, and the record supports, *"Claimant seems to have done little more than file a Petition to accomplish her goals.* Claimant must still prove her case, the relevant standard in this matter requiring Claimant to establish that her upper extremity injuries are casually related to her employment with Employer."[57]

As Employer points out, Claimant admitted "she did not know that the first attorney she spoke with was not handling her claim and assumed, despite no movement on the case for two years, that he was."[58] Similarly, Claimant relied solely on Dr. Patterson as her designated medical expert in this case without asking him whether he agreed with her view that her injuries were caused by her work duties. As noted above, Claimant apparently did not talk to Dr. Patterson about

---

[56] Opening Brief, at 10.

[57] B at 6-7. (Emphasis added).

[58] Answering Brief, at 7-8. (Employer emphasizes, "If Ms. Harris was unaware of the status of her claim it was because she made no effort to become aware. This argument requires the Court to conclude that with no filed Petition, no attorney-client agreement, and no trial date Ms. Harris still reasonably thought "all this would be handled by" another attorney. Communication works both ways and if Ms. Harris heard nothing from someone who she thought was handling everything over a two year timespan it would be a matter of simple and minimal diligence to call that attorney and ask about her case.").

14

causation until well after noticing his deposition.[59]   Had Claimant asked Dr. Patterson about his opinion on causation before noticing his deposition, she would have had time to search for a new expert before the Hearing.  And as the Board noted:

> [I]t is not that Dr. Patterson is unavailable; it is that Claimant has chosen not to call him. He is the only "scheduled" medical witness for Claimant and there is no other medical witness that Claimant can identify who is unable to be deposed.[60]

The Record does not support Claimant's contention that the Board erred as a matter of law.  To the contrary, the Board properly looked to 19 *Del. C.* § 2348(h) and Board Rule 12, considered the bases for "good cause" and determined that Claimant failed to demonstrate good cause.  The Court finds no legal error in the Board's analysis or decision.

## C. The Board's Denial of Claimant's Petition Was Supported By Substantial Evidence

On the last page of her Opening Brief, Claimant conclusively argues: "The Board's denial of Ms. Harris' Petition to Determine Compensation Due is not supported by substantial evidence and is an abuse of discretion."[61]   Claimant's argument lacks merit. Given Claimant's failure to establish good cause for the continuance, the Board had no expert medical testimony casually relating Claimant's

---

[59] B7.
[60] *Id.*
[61] Opening Brief, at 10.

15

injuries to her work duties before it. It had only Claimant's testimony and Claimant's admission that the only doctor who treated Claimant's for the injuries was unwilling to testify under oath that her injuries were causally related to her work duties.[62] As the Board concludes, "there are simply too many unfilled holes in Claimant's causation theory to allow the Board to find in her favor."[63] Based on the record, the Court concludes that the Board's denial of Claimant's Petition is supported by substantial evidence and does not constitute an abuse of discretion.

## VI.    CONCLUSION

Based on the record, the Court finds: (1) that Claimant has not met her burden of showing that the Board's Continuance Decision was an abuse of discretion or unreasonable or capricious; and (2) the Board's Petition Decision is supported by substantial evidence and does not constitute an abuse of discretion. Accordingly, both the decisions are **AFFIRMED**.

**IT IS SO ORDERED.**

Jan R. Jurden, President Judge

cc: Prothonotary

---

[62] B7.
[63] B8.

16